Argued and submitted January 27, affirmed February 26, 1992

OWEN DEVELOPMENT GROUP, INC.,
and Peter O. Eslick,
*Petitioners,*

*v.*

CITY OF GEARHART,
*Respondent.*

(LUBA 91-107 & 91-123; CA A72723)

826 P2d 1016

Jeff H. Bachrach, Portland, argued the cause for petitioners. With him on the brief was O'Donnell, Ramis, Crew & Corrigan, Portland.

William R. Canessa, Seaside, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of LUBA's dismissal of their appeal from what they describe as a "land use decision," contained in a letter by the Gearhart city administrator. LUBA concluded that there was no final reviewable land use decision. We affirm.

In 1985 and 1986, respectively, the city approved petitioners' applications for preliminary and final development plan approval and a conditional use permit for a shopping center. The property is located in a mixed residential-commercial zone that has no permitted uses and that allows as conditional uses those that are permitted in two of the city's commercial zones (C-1 and C-2). The 1985 application recited that the "final configuration of the center is approximate and schematic until final lease arrangements can be made." The city's 1985 decision stated:

> "The applicant has stated in his testimony that the retail shopping center proposed will likely include a food market, a drug store, a variety store, a junior department store, a restaurant, a financial institution and other retail shops. These are all uses permitted in either the C-1 or C-2 Zoning Districts and are therefore included as permitted conditional uses within [this] Zone."

In 1991, a development permit was issued. Petitioners and city personnel disagreed about the uses that would be allowed in the center. Although the city provides no declaratory or interpretive land use procedures, petitioners applied to the city for an "interpretation" of the 1985 decision. They asserted that, under it, they were entitled to include in the shopping center all uses that are allowable in the C-1 and C-2 zones. The city planning commission took no action on the request for an interpretation except to discuss it during a regular meeting. A majority of the commission's members expressed a more restrictive view than petitioners' about what uses had been approved by the 1985 decision. The "consensus" was memorialized in the administrator's letter to petitioners, from which they purported to take their appeal to LUBA.[1] The letter states, in material part:

---

[1] Petitioners also contended that a land use decision is reflected in the commission minutes and that the city erred by not permitting them to appeal the commission's decision to the city council. The analytical underpinnings for those

"Since you were present, you know that no formal motion, resolution or order was approved by the Commission. The Commissioners did, however, express their feelings as to the intended projects when polled by the Chairman. By his count and mine, as well, the consensus was that any of the five major, specifically named businesses could be located in the larger complex without further approval required. Those businesses are a financial institution, a restaurant, a grocery store, a variety store and a drug store. Any other retail stores in the complex would require conditional use approval as they were not specifically approved during the original approval process.

"It is reasonable for you to assume that as the building official, I will act in accordance with this interpretation in issuing permits and/or business licenses."

■ The city moved to dismiss the LUBA appeal on the ground that neither the letter nor any of the events leading to it was a final land use decision that came within LUBA's jurisdiction. LUBA agreed, as do we. Petitioners argue that the letter embodies a discretionary decision in the form of a declaratory ruling that, as a practical matter, resolves any issues that they might raise through an application for a "formal" land use decision. According to petitioners,

"[t]he city's position is that it will only issue a final reviewable decision regarding the uses allowed in the shopping center when the petitioners have built the center and applied for an occupancy permit or business license for a particular retail store. The city administrator's letter states how the city will respond to such a request for an occupancy permit or business license. Petitioners should not be required to exhaust the futile remedy of building an entire shopping center in order to get an appealable determination out of the city."

Petitioners also rely on *Medford Assembly of God v. City of Medford*, 297 Or 138, 681 P2d 790 (1984), *cert den* 474 US 1020 (1985), where the court held that the city's declaratory interpretation, under an ordinance that provided for

---

contentions are essentially the same as those on which petitioners base their argument that the letter embodied a land use decision, and our disposition applies to all of petitioners' contentions.

that procedure,[2] constituted a reviewable land use decision. However, the facts in *City of Medford* were quite different from those in this case, and the differences demonstrate why petitioners are wrong here. The petitioner in *City of Medford* operated a church on property zoned for that purpose. It subsequently opened an elementary school and was notified by a city official that the school use required a conditional use permit. The interpretation that the petitioner sought was that no permit was required under the relevant zoning ordinance provision. The Supreme Court concluded:

> "The [city's] resolution is a 'land use decision' under ORS 197.015(10), which defines 'Land use decision' to mean, among other things, a 'determination made by a local government' concerning the 'application' of a zoning ordinance. This formal determination is a basis for LUBA review even though it is only declaratory. The procedure provided by the city is analogous to the declaratory order provided by the state Administrative Procedure Act in ORS 183.410, which serves as a basis for review in the Court of Appeals." 297 Or at 140. (Footnote omitted.)

In this case, conversely, petitioners did not seek an interpretation of an ordinance; instead, they sought an interpretation of an earlier land use decision. The purpose of their application was to obtain permission for a prospective use by maintaining that it had already been granted, rather than by asking for an independent decision in which the city could determine whether the proposed use was permitted under the zoning ordinance.[3] Stated differently, petitioners did not ask

---

[2] The Supreme Court found it unnecessary in *City of Medford* to decide whether its holding could apply when there is no declaratory procedure under the local legislation. We also do not reach that question.

[3] Section 3.780 of the city's zoning ordinance provides, with respect to permits of the kind in question:

> "1. The applicant and successors shall agree in writing to be bound by the conditions prescribed for approval of the development. The approved final plan and stage development schedule shall control the issuance of all building permits and shall restrict the nature, location, and design of all uses. Minor changes in an approved preliminary or final development plan may be approved by the Building Official if such changes are consistent with the purposes and general character of the development plan. All other modifications, including extension or revisions of the stage development schedule, shall be processed in the same manner as the original application and shall be subject to the same manner [*sic*] as the original application and shall be subject to the same procedural requirements."

for the "application of a zoning ordinance"; rather, they sought permission for a use *without* the direct application of the zoning ordinance.

In *Terraces Condo. Assn. v. City of Portland*, 110 Or App 471, 823 P2d 1004 (1992), we were presented with a corollary of petitioners' argument. The petitioners there had sought and obtained from the city a favorable interpretation of an earlier variance decision. They argued that, because the city's action entailed the interpretation of a land use decision rather than the application of a land use regulation, the action was not a land use decision subject to LUBA's review. We rejected that argument and concluded that "the 'interpretation' of a variance necessarily involves the application of the land use regulations under and from which the variance was allowed." 110 Or App at 477.

It may be that the city here could have indulged in the same fiction that the city and the parties in *Terraces Condo. Assn.* did, with the same result on any reviewability question. However, the city was also free not to do that and to insist — as it did — that petitioners not obtain a land use decision without applying for one in accordance with its established procedures. As for petitioners' contention that the effect of the city's action is to require that they "exhaust the futile remedy of building an entire shopping center" in order to obtain an appealable decision, that is simply not the remedy that they must exhaust. They may proceed under section 3.780 of the ordinance, *see* n 3, *supra*, or, possibly, apply for a conditional use permit or other land use decision concerning a prospective use, just as they did in 1985.[4]

The underlying thesis of petitioners' argument is a form over substance one, with which we are not unsympathetic. They understand the 1985 decision to have granted what the city and LUBA have concluded that they must apply for now. However, petitioners are not free to invent their own procedures rather than following those that the law prescribes. If they are not certain enough to act on their understanding that the 1985 decision gives them what they want,

---

[4] We do not imply that the meaning of the 1985 and 1986 decisions is not relevant to the disposition of an application. Indeed, section 3.780 suggests that those decisions may be quite relevant.

they must apply for a decision about the uses that are in doubt.

■ Petitioners also argue that, having dismissed their appeal, LUBA was required to transfer the case to the circuit court under ORS 19.230(4):

> "A notice of intent to appeal filed with the Land Use Board of Appeals pursuant to ORS 197.830 and requesting review of a decision of a municipal corporation made in the transaction of municipal corporation business that is not reviewable as a land use decision or limited land use decision as defined in ORS 197.015 shall be transferred to the circuit court and treated as a petition for writ of review. * * *"

■ We do not agree with petitioners' reading of the statute. We construe the words "not reviewable as a land use decision * * * as defined in ORS 197.015" to mean that the subject matter of the controversy is outside the statutory definition of the term. We do not agree with petitioners that the statute was meant to give circuit courts jurisdiction over land use issues simply because local decisions that can only be made through the land use process are not properly or completely formalized and therefore do not qualify as final decisions over which LUBA can exercise its jurisdiction. *See* ORS 197.015(10).

Affirmed.