TOWN OF RHINE, Plaintiff-Appellant,

v.

Brock O. BIZZELL, Matthew A. Schuette, Jonathon
W. Thompson, Timothy J. Van der Vaart, Andrew
S. Wiesz, Scott R. Wiesz, and Manitowoc Area Off
Highway Vehicle Club, Inc.,
Defendants-Respondents.

Supreme Court

*No. 2006AP450. Oral argument February 26, 2008.
—Decided July 1, 2008.*

2008 WI 76

(Also reported in 751 N.W.2d 780.)

6

For the plaintiff-appellant there were briefs by *Joseph R. Cincotta* and the *Law Offices of Joseph R. Cincotta,* Milwaukee, and by *Paul Dirkse* and *O'Neil, Cannon, Hollman, DeJong, S.C.,* Sheboygan, and oral argument by *Joseph R. Cincotta.*

For the defendants-respondents there was a brief by *Michael E. Lambert* and *Kummer, Lambert & Fox, LLP,* Manitowoc, and oral argument by *Michael E. Lambert.*

An amicus curiae brief was filed by *Andrew T. Phillips, Gina M. Ozelie,* and *Stadler, Centofanti & Phillips, S.C.,* Mequon, on behalf of the Wisconsin Counties Association.

An amicus curiae brief was filed by *Lee Turonie,* assistant legal counsel, Shawno, on behalf of the Wisconsin Towns Association.

An amicus curiae brief was filed by *Thomas D. Larson* and *Debra P. Conrad,* Wisconsin REALTORS® Association, Madison, and *John A. Kassner III* and *Murphy Desmond S.C.,* Madison, on behalf of the Wisconsin REALTORS® Association, and oral argument by *John A. Kassner III.*

¶ 1. ANNETTE KINGSLAND ZIEGLER, J. This case is before the court on certification by the court of appeals, pursuant to Wis. Stat. § (Rule) 809.61 (2005–06).[1] The circuit court concluded that Town of Rhine, Wis., Municipal Code § 4.08(2)(a),[2] "B-2 Commercial Manufacturing or Processing," is unconstitutional and that the defendants' nuisance ordinance violations should be dismissed. The court of appeals certified two issues to this court.

¶ 2. The first issue is whether Town of Rhine, Wis., Municipal Code § 4.08(2)(a) is unconstitutional on its face. We conclude that § 4.08(2)(a), the B-2 District, is unconstitutional on its face because it is arbitrary and unreasonable in that it precludes any use as of right in the B-2 District and such limitation bears no substantial relation to the public health, safety, morals or general welfare.

¶ 3. The second issue is whether the circuit court properly dismissed the defendants' nuisance ordinance violations. We conclude that the circuit court applied a common-law definition of "nuisance" rather than the definition of "public nuisance" articulated in Town of Rhine, Wis., Municipal Code § 2.02. As a result, we remand to the circuit court to apply the code's definition of "public nuisance."

---

[1] All subsequent references to the Wisconsin Statutes are to the 2005–06 versions unless otherwise indicated. References to the Town of Rhine, Wis., Municipal Code are to the 2005 version unless otherwise indicated.

[2] Town of Rhine, Wis., Municipal Code § 4.08(2)(a) reads in part, "[t]here are no permitted uses in the B-2 District, except that those uses permitted in the Agricultural Land Districts A-1, A-2 and A-3 may be authorized in conjunction with any conditional uses . . . . All uses are conditional and shall comply with the provisions of Section 4.09 of this ordinance."

¶ 4. Therefore, we affirm in part, reverse in part, and remand to the circuit court for a new hearing on the public nuisance claim.

## I. FACTS

¶ 5. On October 1, 2003, the Manitowoc Area Off Highway Vehicle Club, Inc., (hereinafter "the Club") purchased 77.2 acres of land in section twelve of the Town of Rhine, Sheboygan County. The zoning classification of this land has been "B-2 Commercial Manufacturing or Processing" for 20 years. Within this classification, "[t]here are no permitted uses in the B-2 District, except that those uses permitted in the Agricultural Land Districts A-1, A-2 and A-3 may be authorized in conjunction with any conditional uses . . . . All uses are conditional and shall comply with the provisions of Section 4.09 [Conditional Uses] of this ordinance." Town of Rhine, Wis., Municipal Code § 4.08(2)(a). Conditional uses in the "B-2 Commercial Manufacturing or Processing" district include: (1) fabrication of consumer or industrial commodities; (2) garbage, rubbish, offal, industrial waste and dead animal reduction or disposal; (3) quarrying; (4) mining and ore processing; (5) salvage yards for wood, metals, papers and clothing; and (6) stockyards.[3] *Id.*

_____

[3] On March 1, 2005, the Town of Rhine amended the conditional uses in the B-2 District to include off-road vehicle parks. The Club initially applied for a conditional use permit under the revised ordinance, but it subsequently requested that the application be held while the defendants sought to dismiss the nuisance ordinance violations. The conditional use permit would have allowed ATV activity on Wednesdays and Fridays from 10:00 a.m. until 6:00 p.m. but not on weekends or holidays.

¶ 6. After purchasing the property in 2003, club members used the property for riding all-terrain vehicles (ATVs) and hunting. On January 6, 2004, pursuant to a request by the Town of Rhine, the Club's president appeared at a Town of Rhine board meeting.[4] At the meeting, the Club president was asked what activities were occurring on the property. The Club president responded that members "are a group of families that live in the city limits and don't own enough property to enjoy outdoor recreation such as hunting, horseback riding, bicycling, ATV riding etc."

¶ 7. Chairman Sager asked if the Club members were aware that the land was zoned B-2 when they purchased the land. The Club president responded that the Club's attorney informed them that "because it was zoned business and not residential[,] the manner in which they are using the land should not be an issue." Chairman Sager then related that B-2 zones require a conditional use permit "for any use of the land." He further stated that "an application should be directed to the Plan Commission for either a CUP [conditional use permit] or rezoning." The Club president then asked whether he needed to apply for specific uses or different zoning. Chairman Sager answered that it would depend on how they intended to use the land.

¶ 8. On May 19, 2004, the Club applied for a conditional use permit. In the conditional use application, the Club stated that it wanted to use the property for recreational activities, such as hunting and riding ATVs. The application stated, "[t]his IS NOT a request for a commercial or industrial operation." The condi-

---

[4] The record contains minutes from the January 6, 2004, meeting. The minutes are entitled: "Town of Rhine Board of Supervisors Regular Monthly Meeting." Chairman Don Sager conducted the meeting.

tional use permit was denied on September 7, 2004.[5] Although the record is unclear as to when, the Club also applied for the B-2 zone to be rezoned to a B-1, "Neighborhood Business" district. That rezoning request was also denied, but it is unclear from the record when it was denied.

¶ 9. On October 10, 2004, the Elkhart Lake Police Department issued citations to six club members for violating the Town of Rhine's Public Nuisance Ordinance. Town of Rhine, Wis., Municipal Code § 2.01. On December 14, 2004, a consolidated trial was held for all six defendants. The Elkhart Lake Municipal Court dismissed the ordinance violation due to insufficient evidence. Pursuant to Wis. Stat. § 800.14, the Town of Rhine appealed the municipal court's decision to the Sheboygan County Circuit Court.

¶ 10. On December 19, 2004, in Sheboygan County Circuit Court, the Town of Rhine filed a complaint that alleged two causes of action. In the first cause of action, regarding the public nuisance violations of the ordinance, the Town of Rhine asked for a de novo review of the dismissed citations. In the second cause of action, regarding the zoning violation, the Town of Rhine asked for a determination of whether the Club was violating the Town of Rhine's zoning code, and the Town of Rhine sought an order enjoining the Club from operating ATVs on the property.

¶ 11. On August 29, 2005, a trial to the court was held. On January 13, 2006, the circuit court issued a written decision. In that decision, the circuit court characterized the two issues as follows: (1) whether the Town of Rhine B-2 zone use restriction was constitu-

---

[5] Neither the minutes of this meeting nor any other source appears in the record that provides the board's reasoning.

tional; and (2) whether the Club's use of the property constituted a public nuisance.

¶ 12. The circuit court concluded "that a zoning ordinance which bars all uses within a district is unreasonable." It further stated that "a zoning ordinance which permits no uses within a district is confiscatory in nature and oppressive." Accordingly, the circuit court concluded that the zoning ordinance was unconstitutional. With respect to the nuisance claim, the circuit court determined that although the ordinance related to a public nuisance, the Town of Rhine's claim was an attempt to abate a private nuisance. The circuit court, citing to *Milwaukee Metropolitan Sewerage District v. City of Milwaukee*, 2005 WI 8, 277 Wis. 2d 635, 691 N.W.2d 658, stated that a nuisance is a public nuisance if "the condition or activity interferes with the public right or use of public space." The circuit court determined that the nuisance could not be a public nuisance because the property at issue was not a public place, and the Club's activities did not affect the entire community. As a result, it concluded that the Town of Rhine lacked standing to advance the claim. The Town of Rhine appealed the circuit court's decision. Pursuant to Wis. Stat. § 809.61, the court of appeals certified this case to us for review and determination. We accepted the certification.

## II. STANDARD OF REVIEW

¶ 13. "The interpretation and application of an ordinance to an undisputed set of facts is a question of law, which this court decides de novo." *Bruno v. Milwaukee County*, 2003 WI 28, ¶ 6, 260 Wis. 2d 633, 660 N.W.2d 656. The constitutionality of an ordinance is also a question of law, which this court reviews de novo. *Wilke v. City of Appleton*, 197 Wis. 2d 717, 726, 541 N.W.2d 198 (Ct. App. 1995).

## III. ANALYSIS

¶ 14. The Club argues that Municipal Code § 4.08(2)(a), the B-2 District, is unconstitutional on its face because it violates due' process in that any use of the property is prohibited unless the landowner obtains a conditional use permit. It further argues that there are no clear and objective standards for the landowner to obtain a conditional use permit. The Town of Rhine, on the other hand, argues that Municipal Code § 4.08(2)(a) is constitutional. It argues that the B-2 District does allow for certain uses of the property under a conditional use permit, and therefore, it is inaccurate to assert that B-2 zoning does not allow any use. The Town of Rhine also argues that Municipal Code § 4.01 sets forth adequate standards for obtaining a conditional use permit, and it asserts that a number of other municipalities have conditional use provisions similar to the Town of Rhine. We conclude that § 4.08(2)(a) is unconstitutional on its face.

A. Zoning principles

¶ 15. Zoning ordinances and land use regulations have a useful, valid purpose, and the government has broad authority to enact such classifications for the purpose of promoting health, safety, morals or the general welfare of the community. *State ex rel. American Oil Co. v. Bessent,* 27 Wis. 2d 537, 544–46, 135 N.W.2d 317 (1965).

¶ 16. The Town of Rhine has adopted village powers pursuant to Wis. Stat. § 61.35, which states that the powers and duties conferred and imposed by Wis. Stat. § 62.23, "City Planning," applies to village officials.

Zoning of municipalities is, therefore, accomplished pursuant to § 62.23(7) and its subsections.

¶ 17. "Zoning ordinances comprehensively assign compatible land uses to zoning districts throughout the community." Daniel R. Mandelker, *Land Use Law* § 1.04, at 1–4 (5th ed. 2003). The municipality is generally divided into different districts, such as residential, commercial, and industrial.[6] *Id.* The use of comprehensive zoning arose in the early twentieth century, and the United States Department of Commerce encouraged the use of comprehensive zoning by publishing the model "state enabling act."[7] 1 Kenneth H. Young, *Anderson's American Law of Zoning* § 1.14, at 21 (4th ed. 1996). Comprehensive zoning earned the

[6] Alternatives to traditional zoning have arisen over the years, such as "form based zoning" or "mixed use zoning." S. Mark White, *Classifying and Defining Uses and Building Forms: Land-Use Coding for Zoning Regulations*, American Planning Association Zoning Practice, Sept. 2005, at 2–3; Sonia Hirt, *The Devil is in the Definitions*, 73 Journal of the American Planning Association, at 436 (Autumn 2007). " '[F]orm-based zoning' is the latest trend in the planning profession." White, *supra*, at 3. It is "based on the theory that design controls can resolve inconsistencies between land uses. Design controls for [form-based zoning] ordinances include building envelope standards, building frontage requirements, fenestration (window and entryway), facade coverage, and traditional façade modulation techniques." *Id.* at 2. In contrast, "mixed use zoning" mixes a number of different uses in respective zones rather than limiting mixed uses. Hirt, *supra*, at 436. Many urbanists believe that mixed use districts are the key to restoring vibrancy to American cities. *Id.* However, traditional "use districting remains the mainstay of most zoning ordinances" and "this is expected to continue for the foreseeable future." White, *supra*, at 3.

[7] *See generally* 1 Kenneth H. Young, *Anderson's American Law of Zoning* § 2.21, at 67–69 (4th ed. 1996) (discussing the significance of the Standard State Zone Enabling Act).

approval of this court as early as 1923. *State ex rel. Carter v. Harper,* 182 Wis. 148, 196 N.W. 451 (1923); *see also Village of Euclid, Ohio v. Ambler Realty Co.,* 272 U.S. 365 (1926) (upholding a comprehensive zoning ordinance). Wisconsin's enabling act is found in Chapter 62 of the Wisconsin Statutes. *See* Wis. Stat. § 62.23.

■

¶ 18. In *American Oil Co.,* this court stated that a comprehensive zoning ordinance was a justified "exercise of the police power not only in the interest of public health, morals, and safety, but particularly for the promotion of public welfare, convenience and general prosperity." 27 Wis. 2d at 544. A comprehensive zoning ordinance, enacted pursuant to Wis. Stat. § 62.23, is presumed valid and must be liberally construed in favor of the municipality. *American Oil Co.,* 27 Wis. 2d at 546.

¶ 19. In general, zoning ordinances provide landowners with permitted uses, which allow a landowner to use his or her land, in said manner, as of right. Mandelker, *supra,* § 6.39, at 6–44. "Most ordinances impose a broad division of land uses, and, in addition, provide that specified uses may be established or maintained in named districts, only pursuant to a special permit . . . ." 3 Young, *supra,* § 21.01, at 693–94. "Uses are permitted in designated districts because they are thought to be compatible with other uses permitted in such district." 2 Young, *supra,* § 9.20, at 169.

■

¶ 20. In addition to permitted uses, ordinances may also provide for conditional uses by virtue of a special use or conditional use permit.[8] A conditional

---

[8] In *Anderson's American Law of Zoning,* "the term 'special permit' and 'exception' are not terms of art. They will be used consistently [in *Anderson's American Law of Zoning*], but the ordinances employ in addition to these terms, 'conditional use,'

use, however, is different than a permitted use. *See* S. Mark White, *Classifying and Defining Uses and Building Forms: Land-Use Coding for Zoning Regulations,* American Planning Association Zoning Practice, Sept. 2005, at 8. While a permitted use is as of right, a conditional use does not provide that certainty with respect to land use. *See id.* Conditional uses are for those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner. *State ex rel. Skelly Oil Co. v. Common Council, City of Delafield,* 58 Wis. 2d 695, 701, 207 N.W.2d 585 (1973); 3 Young, *supra,* § 21.06 (discussing uses commonly subject to special permit requirements).

¶ 21. A conditional use permit allows a property owner "to put his property to a use which the ordinance expressly permits when certain conditions [or standards] have been met." *Skelly Oil Co.,* 58 Wis. 2d at 701. The degree of specificity of these standards may vary from ordinance to ordinance.[9] 3 E.C. Yokley, *Zoning*

_____

'special exception,' 'special use,' and a variety of other combinations of descriptive words." 2 Young, *supra,* § 9.17, at 162. *See generally* Daniel R. Mandelker, *Land Use Law* § 6.54 (5th ed. 2003) (discussing the role and function of conditional uses).

[9] Although general standards for determining whether a conditional use permit should be granted have been utilized by some municipalities, most ordinances provide standards that are more detailed. 3 E.C. Yokley, *Zoning Law and Practice* § 21-1, at 21-4 (4th ed. 2002) (2002 revision by Douglas Scott MacGregor). The more generalized standards, adopted by some municipalities, have simply stated that uses are allowed if they are in the "public interest," "general welfare," or "consistent with the 'purpose or intent' of the zoning ordinance." Mandelker, *supra,* § 6.03, at 6-6. However, standards must be sufficiently

*Law and Practice* § 21–1, at 21–4 (4th ed. 2002) (2002 revision by Douglas Scott MacGregor).

¶ 22. A zone that provides for use of property only when a landowner obtains a conditional use permit may face scrutiny. *See* Julian Conrad Juergensmeyer & Thomas E. Roberts, *Land Use Planning and Development Regulation Law* 283–84 (2d ed. 2007).[10] Condi-

---

specific in order to allow for judicial review. *See* 3 Young, *supra,* § 21.09, at 709 (discussing the specificity of standards). "An ordinance fails to provide suitable standards where it confers on a board [] 'unlimited discretion to condition the issuance of the permit on the basis of such norms or standards as it may from time to time arbitrarily determine.' " *Id.* at 711. *Anderson's American Law of Zoning* provides an example of conditional use standards. *See* 5 Alan C. Weinstein, *Anderson's American Law of Zoning* § 34.23, at 574–75 (4th ed. 1997). While the example in *Anderson's American Law of Zoning* is still general in nature, it provides more guidance than, for example, simply allowing those uses that are in the "public interest" or "general welfare." "Cases that invalidate [general standards, such as in the 'public interest' or 'general welfare,'] emphasize the unlimited discretion they confer on zoning agencies." Mandelker, *supra,* § 6.03, at 6–6; *see also* 3 Young, *supra,* § 21.09. "Cases that uphold these standards emphasize the need for flexibility in zoning administration and the difficulty of drafting more precise criteria." Mandelker, *supra,* § 6.03, at 6–6. As noted in *Anderson's American Law of Zoning,* "a sampling of both approved and disapproved standards reveals an overlap which cannot be satisfactorily explained . . . ." 3 Young, *supra,* § 21.09, at 715–16.

[10] Professors Juergensmeyer and Roberts state:

> From the inception of zoning, the use of the special permit has grown. . . .

> A court will likely invalidate an ordinance that handles all uses by special permit. The court in *Rockhill v. Township of Chesterfield* faced a situation that almost went that far. The authorities zoned the entire township for agricultural and residential uses, and no other use was possible without issuance of a

tional use permits, however, remain a widely accepted tool of municipal planning.[11] *Skelly Oil Co.*, 58 Wis. 2d at 700–01.

¶ 23. Allowing for conditional uses, in addition to permitted uses as of right, makes sense when one considers the purpose of the conditional use permit. First, conditional uses are flexibility devices, "which are designed to cope with situations where a particular use, although not inherently inconsistent with the use classification of a particular zone, may well create special problems and hazards if allowed to develop and locate as a matter of right in [a] particular zone." *Id.* at 701; *see also* Gail Easley, *Conditional Uses: Using Discretion, Hoping for Certainty,* American Planning Associa-

special permit. The court found the ordinance beyond the scope of the enabling statute since the zoning was neither uniform nor comprehensive. It placed too many uses subject to "local discretion without regard to districts, ruled by vague and elusive criteria, [and was] . . . the antithesis of zoning." The *Rockhill* court's objection may be overstated. If the standards are adequate and written into the ordinance, there is no reason to require control of land use by districting rather than a case by case regulatory scheme.

Julian Conrad Juergensmeyer & Thomas E. Roberts, *Land Use Planning and Development Regulation Law* 283–84 (2d ed. 2007) (footnotes omitted).

[11] However, zoning experts have differing opinions with respect to the value of special permit zoning, i.e., conditional use permits. 2 Young, *supra,* § 9.18, at 166. Some experts believe "that the trend toward more specially permitted uses is unfortunate in that it narrows the number of uses which a landowner can establish as of right." *Id.* "The special requirement [or conditional use permit] is thought by these critics to impose too heavy a burden upon landowners by requiring them to resort to administrative proceedings to vindicate their right to use their lands." *Id.*

tion Zoning Practice, May 2006, at 2 (identifying conditional uses as flexibility devices).

¶ 24. Second, conditional use permits are appropriate for "certain uses, considered by the local legislative body to be essential or desirable for the welfare of the community . . . , but not at every or any location . . . or without conditions being imposed . . . ." Mandelker, *supra,* § 6.54, at 6–61 (citation omitted). Thus, those uses subject to a conditional use permit are necessary to the community, but because they often represent uses that may be problematic, their development is best governed more closely rather than as of right.

¶ 25. "Conditional use permits"—also referred to as "conditional uses"—however, should not be confused with "conditional-use district zoning"[12] or "conditional zoning." In "conditional-use district zoning," "a landowner requests that some property be placed in a new zoning district that has no permitted uses, only special or conditional uses." David W. Owens, *Legislative Zoning Decisions* 93 (2d ed. 1999). In such zoning:

> [T]he ordinance text is amended to create a set of conditional-use districts. These conditional-use districts have no permitted uses as of right: no new use of land may be undertaken unless a special- or conditional-use permit is first secured. Often there is one conditional-use district to correspond with each regular or general zoning district. These conditional-use districts are "floating zones"; that is, they are not

---

[12] "Conditional-Use District Zoning" is also known as "conditional-use zoning" or "special-use district zoning." David W. Owens, *Legislative Zoning Decisions* 93 (2d ed. 1999). For an example of a reference to conditional-use zoning, see *Village Creek Property Owners' Association, Inc., v. The Town of Edenton,* 520 S.E.2d 793, 796 (N.C. App. 1999).

applied to any property until a petition to apply them is made by the landowner. . . .

*Id.* (footnote omitted). "Conditional zoning," on the other hand, is rezoning that is made "subject to the owner's acceptance of additional requirements that otherwise are not applied in the new zoning district." *Id.* at 97; *see also* Mandelker, *supra,* § 6.62 (discussing "conditional zoning").

B. Constitutional principles

¶ 26. The role of courts in zoning matters is limited because zoning is a legislative function. *Buhler v. Racine County,* 33 Wis. 2d 137, 146–47, 146 N.W.2d 403 (1966). An ordinance is presumed valid and must be liberally construed in favor of the municipality. *American Oil Co.,* 27 Wis. 2d at 546. The party challenging the constitutionality of an ordinance bears a heavy burden. *See generally* 1 Young, *supra,* §§ 3.01, 3.14. In Wisconsin, "an ordinance will be held constitutional unless the contrary is shown beyond a reasonable doubt[,] and the ordinance is entitled to every presumption in favor of its validity." *Highway 100 Auto Wreckers, Inc. v. City of West Allis,* 6 Wis. 2d 637, 646, 96 N.W.2d 85 (1959); *see also* 1 Young, *supra,* § 3.22 (discussing the beyond a reasonable doubt standard in Wisconsin).[13] "Consequently, although a court may dif-

---

[13] Wisconsin is one of a minority of states that asserts a beyond a reasonable doubt standard to successfully challenge the constitutionality of a municipal ordinance. 1 Young, *supra,* § 3.22; *see also* § 3.20–3.21 (discussing the "fairly debatable issue" and "clear and convincing evidence" standards, which are applied in the majority of states.

fer with the wisdom, or lack thereof, or the desirability of the zoning, the court, because of the fundamental nature of its power, cannot substitute its judgment for that of the zoning authority in the absence of statutory authorization." *Buhler,* 33 Wis. 2d at 146–47.

¶ 27. Nonetheless, a properly enacted ordinance must satisfy constitutional requirements. *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1223 (6th Cir. 1992) (stating that "the zoning power is not infinite and unchallengeable; it 'must be exercised within constitutional limits' "). Land use litigation generally arises out of the manner "in which zoning text and ordinance classify land into zoning districts." Mandelker, *supra,* § 1.04, at 1–5. Constitutional challenges may arise, for example, under the takings, due process, or equal protection clauses of the state and federal constitutions. *Pearson,* 961 F.2d at 1215–16; *see generally* Mandelker, *supra,* ch. 2, "The Constitutional Framework." Substantive due process claims with regard to land use regulation, as we see in this case, do not have high success rates. *Id.,* § 2.39, at 2–46; *but see* 1 Yokley, *supra,* § 3A-1(c) (stating that "[s]ubstantive due process claims in land use litigation are occurring with more frequency"). Under the due process clause, courts generally require that "land use controls must advance legitimate governmental interests that serve the public health, safety, morals, and general welfare." Mandelker, *supra,* § 2.39, at 2–46 through 2–47.

¶ 28. "The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving 'any person of life, liberty, or property without due process of

law.' "[14] *Penterman v. Wisconsin Elec. Power Co.,* 211 Wis. 2d 458, 480, 565 N.W.2d 521 (1997) (citation omitted); *see also Laughter v. Board of County Comm'rs for Sweetwater County,* 110 P.3d 875, 887–88 (Wyo. 2005). "The substantive component of the Due Process Clause protects individuals from 'certain arbitrary, wrongful actions 'regardless of the fairness of the procedures used to implement them.' ' " *Penterman,* 211 Wis. 2d at 480 (citations omitted). "Substantive due process forbids a government from exercising 'power without any reasonable justification in the service of a legitimate governmental objective.' " *Thorp v. Town of Lebanon,* 2000 WI 60, ¶ 45, 235 Wis. 2d 610, 612 N.W.2d 59 (citation omitted).

¶ 29. The United States Supreme Court has recognized a landowner's right to substantive due process in zoning cases. *See Pearson,* 961 F.2d at 1217, 1220 (citing to *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 263 (1977); *Nectow v. City of Cambridge,* 277 U.S. 183, 187 (1928); *[Village of] Euclid[, Ohio] v. Ambler Realty Co.,* 272 U.S. 365, 373 (1926)). The Supreme Court has stated, "a zoning ordinance is unconstitutional when its 'provisions are clearly arbitrary and unreasonable having no substantial relation to the public health, safety, morals or general welfare.' " *Thorp,* 235 Wis. 2d 610, ¶ 45 (quoting *Euclid,* 272 U.S. at 395).

■■■■■

¶ 30. However, when evaluating a claim that a landowner's substantive due process rights have been violated, a plaintiff must show that he or she has been

------

[14] The Fourteenth Amendment to the United States Constitution provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

deprived of a property interest that is constitutionally protected. *Thorp,* 235 Wis. 2d 610, ¶ 46 (citing *Penterman,* 211 Wis. 2d at 480).[15] "A property interest is constitutionally protected if 'state law recognizes and protects that interest.' " *Thorp,* 235 Wis. 2d 610, ¶ 46. "[I]t is well settled that the rights of ownership and use of property have long been recognized by this state." *Penterman,* 211 Wis. 2d at 480. Additionally, Wis. Stat. § 62.23(7)(b) provides that "[a]ll such regulations shall be uniform . . . for the use of land throughout each district, but the regulations in one district may differ from those in other districts."

C. Town of Rhine's B-2 District and conditional use ordinance

¶ 31. The Town of Rhine's Municipal Code § 4.08(2)(a) governs the permitted uses of the property at issue and provides:

(2) B-2 COMMERCIAL MANUFACTURING OR PROCESSING.

(a) *Permitted Uses.* There are no permitted uses in the B-2 District, except that those uses permitted in the Agricultural Land Districts A-1, A-2 and A-3 may be authorized in conjunction with any conditional uses by express reference in the issued conditional use permit and upon such terms as the Plan Commission may

---

[15] *But see Thorp v. Town of Lebanon,* 2000 WI 60, ¶ 60, 235 Wis. 2d 610, 612 N.W.2d 59 (Abrahamson, C.J., dissenting). Chief Justice Abrahamson, joined by Justices Bradley and Sykes, wrote:

The majority [in *Thorp*] dismisses the plaintiffs' substantive due process claim based on the alleged violation of Wis. Stat. § 60.61(4) by noting that the statute does not secure plaintiffs with property rights in their land. [*Thorp*] Majority op. at ¶ 48. The opinion's language suggests that plaintiffs need a statutorily created right to have a property interest in their land. I disagree.

recommend and the Town Board shall determine. All uses are conditional and shall comply with the provisions of Section 4.09 of this ordinance.

(b) *Conditional Uses.* The following conditional uses may be authorized in the B-2 District pursuant to the provisions of Section 4.09 of this ordinance:

1. Fabrication of consumer or industrial commodities.

2. Garbage, rubbish, offal, industrial waste and dead animal reduction or disposal.

3. Quarrying: Gravel, sand, rock, and soil removal and processing. (Rev. 11/04/03)

4. Mining and ore processing.

5. Salvage yards for wood, metals, papers and clothing.

6. Stockyards.

¶ 32. Section 4.09 of the Town of Rhine's Municipal Code governs conditional uses, and it outlines the process to obtain a conditional use permit. "Determination of Plan Commission," § 4.09(4) provides:

The Plan Commission shall make such written findings and determinations as it deems appropriate based upon the information submitted to it and presented at the public hearing, and shall make a written recommendation to the Town Board with regard to such conditional use application. . . . *In making its determinations and recommendations, the Commission shall be guided by the purposes, goals and intent set forth in or necessarily implied from Section 4.01* [Interpretation and Purpose] *and any other applicable sections of this ordinance.*

(Emphasis added.)

24

¶ 33. Section 4.01(1), "Purpose," in relevant part outlines that "[t]he purpose of this ordinance is to promote the health, safety, morals and general welfare of the Town of Rhine by regulating and restricting" the use of land. Section 4.01(2), "Intent," states:

It is the general intent of this ordinance to:

(a) Stabilize and protect property values and the tax base.

(b) Recognize the needs of agriculture, forestry, industry and business in future growth.

(c) Further the appropriate use of land and conservation of natural resources.

(d) Encourage the wise use, conservation, development and protection of the Town's water, soil, wetland, woodland and wildlife resources.

(e) Preserve natural growth and cover and promote the natural beauty of the township.

(f) Prevent overcrowding and avoid undue population concentration and urban sprawls.

(g) Facilitate the adequate provision of public facilities and utilities.

(h) Lessen congestion and promote the safety and efficiency of streets, highways and other transportation systems.

(i) Provide adequate light, air, sanitation, drainage and open space.

(j) Regulate the use of structures, lands and waters outside of shoreland areas.

(k) Regulate lot coverage, population density and distribution and the location and size of structures.

(L) Prohibit uses or structures incompatible with the natural characteristics, existing development or intended development within or adjacent to a zoning district.

(m) Implement those municipal, county, watershed or regional plans or their components adopted by the township.

## D. Constitutionality of the Town of Rhine, Wis., Municipal Code § 4.08(2)(a), "B-2 Commercial Manufacturing or Processing"

■

¶ 34. We conclude that Municipal Code § 4.08(2)(a), the B-2 District, is unconstitutional on its face because it is arbitrary and unreasonable in that it precludes any use as of right in the B-2 District and such limitation bears no substantial relation to the public health, safety, morals or general welfare.

¶ 35. A facial substantive due process challenge, as the landowners have made in this case, is only one of many ways in which a landowner can challenge a limitation on the use of his or her land. *See Pearson*, 961 F.2d at 1215–16. However, facial substantive due process challenges are rarely successful. Mandelker, *supra*, § 2.39, at 2–46. The seminal zoning case, which involved a facial substantive due process challenge, is *Euclid*.[16] *See* Mandelker, *supra*, § 2.06 (discussing *Euclid*). In *Euclid*, the court upheld the constitutionality of a comprehensive zoning ordinance against a facial substantive due process challenge. *Id*. at 2–9 and 2–10. The Village of Euclid adopted a comprehensive zoning ordinance that zoned the area in question so as to allow

---

[16] *Village of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365 (1926).

only residential use. *See Euclid,* 272 U.S. at 379–84. In so doing, it excluded all non-residential uses. *Id.* The Supreme Court noted that the exclusion of industrial use included even those industrial uses that are "neither offensive nor dangerous." *Id.* at 388. The Court concluded that "[i]t cannot be said that the ordinance in this respect 'passes the bounds of reason and assumes the character of a merely arbitrary fiat.' " *Id.* at 389 (citation omitted). The Court stated:

> If it be a proper exercise of the police power to relegate industrial establishments to localities separated from residential sections, it is not easy to find a sufficient reason for denying the power because the effect of its exercise is to divert an industrial flow from the course which it would follow, to the injury of the residential public, if left alone, to another course where such injury will be obviated. It is not meant by this, however, to exclude the possibility of cases where the general public interest would so far outweigh the interest of the municipality that the municipality would not be allowed to stand in the way.

*Id.* at 389–90.

¶ 36. In the wake of *Euclid,* other cases have helped to clarify the discussion regarding substantive due process challenges to zoning. *See, e.g., Moore v. City of East Cleveland, Ohio,* 431 U.S. 494, 498 n.6 (1977); *Pearson,* 961 F.2d 1211. Even so, the line between a valid or invalid exercise of police power remains less than clear. As the Court noted in *Euclid,* "[t]he line which in this field separates the legitimate from the illegitimate assumption of power is not capable of precise delimitation. It varies with circumstances and conditions. A regulatory zoning ordinance, which would be clearly valid as applied to the great cities, might be clearly invalid as applied to rural communities." *Euclid,* 272 U.S. at 387.

27

¶ 37. While the line between permissible and impermissible zoning may not always be readily ascertainable, the requisite standard that must be applied for a substantive due process challenge is clear: we must determine whether the ordinance is clearly arbitrary and unreasonable in the restricted sense that it has no substantial relation to the public health, safety, morals or general welfare.[17] *Euclid,* 272 U.S. at 395; *Pearson,* 961 F.2d at 1223.

¶ 38. Certainly, municipalities may regulate where and under what circumstances certain less desirable uses, such as salvage yards and stockyards, may be developed. However, here no justification exists for precluding all uses in the B-2 District and only provid-

---

[17] Recently, in *Action Apartment Association, Inc. v. Santa Monica Rent Control Board,* the Ninth Circuit discussed this standard when the plaintiff brought a facial substantive due process challenge to a rent control ordinance. 509 F.3d 1020, 1022 (9th Cir. 2007). The Court stated:

> The Landlords do not assert that the government has taken their property within the meaning of the Fifth Amendment. They do, however, assert that the provisions of the rent control ordinance neither serve nor are rationally related to any legitimate government purpose, and therefore unconstitutionally violate their right to use their property as they see fit. Specifically, they argue that the provisions are arbitrary, unreasonable, and unrelated to the general welfare because there is no legitimate interest in subsidizing non-housing uses of rental properties nor in providing new rights and affirmative defenses for illegal occupants, particularly where California law does not recognize illegal occupants as tenants. [A] regulation that fails to serve any legitimate governmental objective may be so arbitrary or irrational that it runs afoul of the Due Process Clause. . . .

*Id.* at 1026 (quotations and citations omitted).

ing the landowner with the possibility of obtaining a conditional use permit. Ordinances can be drafted so the acceptable uses as of right do not conflict with the conditional uses. Municipalities have the power to zone property and restrict where particular undesirable uses may be developed within the municipality. However, zoning that restricts the land such that the landowner has no permitted use as of right must bear a substantial relation to the health, safety, morals or general welfare of the public in order to withstand constitutional scrutiny. In this case, the restricted use of the B-2 District land does not bear a substantial relation to the public health, safety, morals or general welfare.

¶ 39. We note that rather than precluding all uses as of right in a particular zone, the more common, acceptable practice is to provide for permitted uses as of right, and then in addition to permitted uses, the ordinance may provide for conditional uses. Case law, treatises, zoning journals, and the Town of Rhine's ordinance support this conclusion. Moreover, at least one treatise comments that a zone that only provides for use by virtue of a conditional use permit may face scrutiny. *See* Juergensmeyer & Roberts, *supra,* § 5.24, at 283–84 (stating that "[a] court will likely invalidate an ordinance that handles all uses by special permit" or conditional use permit).

1. Case law

¶ 40. Cases from Wisconsin and other jurisdictions support the conclusion that the common, accepted practice is to first outline permitted uses and then, in addition to permitted uses, the ordinance may provide for conditional uses. A number of cases illustrate this point, but they do not address the merits of a "no

29

permitted uses zone."[18] However, in *Sheerr v. Township of Evesham,* the Superior Court of New Jersey evaluated and applied the substantive due process standard to a parcel that provided no permitted uses and allowed use only when the landowner obtained a conditional use permit. 445 A.2d 46, 60–65 (N.J. Super. Ct. Law Div. 1982). The *Sheerr* court concluded that the ordinance was unconstitutional as-applied to the plaintiff's property. *Id.*

¶ 41. In *Sheerr,* the plaintiff's property was the only property zoned EP-1, and any use in the EP-1 zone was subject to a conditional use permit. *Id.* at 62. The EP-1 designation was based on environmental protection. *Id.* at 60. According to the ordinance, the property within the zone was of "unique character by virtue of the presence of a beech and maple hardwood forest with many holly trees thereon, the function of the area as a natural replenishing of ground water and the function of the area as a natural habitat for birds and other wildlife." *Id.* However, the justifications for "the severe restrictions affecting the plaintiff's premises were de-

---

[18] *See, e.g., Just v. Marinette County,* 56 Wis. 2d 7, 12–13, 201 N.W.2d 761 (1972); Brief of Murdock at App. 133–153 (Wisconsin Law Library, Vol. 3227, Appendices and Briefs, 70 Wis. 2d 562–566), *Town of Richmond v. Murdock,* 70 Wis. 2d 642, 651–52, 235 N.W.2d 497 (1975); *Petersen v. Dane County,* 136 Wis. 2d 501, 509, 402 N.W.2d 376 (Ct. App. 1987); *Groch v. City of Berkeley,* 173 Cal. Rptr. 534, 537–38 (Cal. App. 3d 1981); *Laughter v. Board of County Comm'rs for Sweetwater County,* 110 P.3d 875, 878 (Wyo. 2005). We, however, acknowledge that exceptions to the common, accepted practice exist. *See, e.g., Town of Smithfield v. Fanning,* 602 A.2d 939, 940 (R.I. 1992) (identifying a no permitted use zone but the merits of such a zone were not at issue); *Owen Dev. Group, Inc., v. City of Gearhart,* 826 P.2d 1016, 1017 (Or. App. 1992) (identifying a no permitted use zone but the merits of such a zone were not at issue).

molished by plaintiff's expert witnesses and the admissions of the township officials." *Id.*

¶ 42. The *Sheerr* court stated that an examination of the "conditional uses" led it to conclude that it represented arbitrary legislation. *Id.* at 63. For example, possible conditional uses there included private recreational areas such as camps, golf courses, and athletic fields, but "[a]ll of these uses require the removal of a substantial number of trees, frustrating a central purpose of the EP-1 designation." *Id.* at 64. The ordinance also conditionally permitted a number of commercial uses but only on a five acre lot. *Id.* The court concluded that a commercial use represented the "only realistic possibility for the use of the plaintiff's property." *Id.* at 65. In so finding, the court considered the twelve significant requirements that a landowner would have to meet in order to get a conditional use permit, and as a result, the court characterized the likelihood of being able to use the property for any purpose as "very remote." *Id.* at 64–65. Accordingly, the court concluded that the legislation was arbitrary and the as-applied substantive due process challenge was successful.[19] *Id.* at 63–65.

¶ 43. Here, we conclude that the B-2 District can be appropriately described as a "no permitted uses"

---

[19] While the *Sheerr* court determined that a "conditional use by permit only zone"—also referred by the *Sheerr* court as a "no permitted uses zone"—was arbitrary as applied to this property owner, the court noted that the relevant zoning statutes authorized a "conditional use by permit only zone." The *Sheerr* court determined that the zoning statutes authorized "conditional use by permit only zones" so long as there were "definite specifications and standards" in place. *Id.* at 62–64. In the case at issue today, the standards are generalized and not "definite," so no certainty exists as to a conditional use permit.

zone, and we conclude that the no permitted uses B-2 District is arbitrary and unreasonable because it bears no substantial relation to public health, safety, morals or general welfare. However, we do recognize that there may be limited circumstances in which a "no permitted uses" zone is a valid exercise of power because the restriction bears substantial relation to the public health, safety, morals or general welfare. For example, in *Dur-Bar Realty Co. v. City of Utica,* 394 N.Y.S.2d 913, 918 (N.Y.A.D. 1977), the New York Supreme Court, Appellate Division, concluded that a "no permitted uses" zone was constitutional as the parcel at issue was in a "Land Conservation District and represented a zone located in the flood plain." *Id.* at 915–16, 918. The "Land Conservation District" "aimed to regulate the use" of land in a "flood prone area." *Id.* at 918. The ordinance at issue today does not include a similar purpose as in *Dur-Bar Realty.*

¶ 44. The court in *Dur-Bar Realty* identified several policy objectives for restricting use in a flood plain:

(1) the protection of individuals who might choose, despite the flood dangers, to develop or occupy land on a flood plain; (2) the protection of other landowners from damages resulting from the development of a flood plain and the consequent obstruction of the flood flow; (3) the protection of the entire community from individual choices of land use which require subsequent public expenditures for public works and disaster relief.

*Id.* The court concluded, "[i]t is beyond question that these objectives, which correspond closely to the stated purposes of the present ordinance, may be the subject of a legitimate exercise of the police power." *Id.* The court further stated that, " 'Land Conservation District' provisions do bear a substantial relation to legitimate governmental purpose and a reasonable relation to the

32

goal of flood safety." *Id.* Thus, since the limitations related to flood safety, the restriction satisfied the relationship to the public health, safety, morals or general welfare.

¶ 45. In its analysis, the *Dur-Bar Realty* court contrasted the "flood plain" ordinance in that case with the ordinance at issue in *Marshall v. Village of Wappingers Falls*, 279 N.Y.S.2d 654 (N.Y.A.D. 1967). In *Wappingers Falls*, there were no permitted uses as of right in the "Planned Residential District" but twelve uses were available through a special permit. *Id.* at 655–56. The court in *Wappingers Falls* concluded that the "Planned Residential District was *ultra vires* because it was not zoning in accordance with a comprehensive plan." *Id.* The court in *Dur-Bar Realty* stated that the Planned Residential District in *Wappingers Falls* did not appear "in any way unusual in topography or location so as to justify the subjection of all use proposals to case by case decision." *Dur-Bar Realty,* 394 N.Y.S.2d at 916. In contrast, the court in *Dur-Bar Realty* concluded that the flood plain ordinance was "a product of assessment of the character of the land in light of the public health and safety interests in being protected against flooding and other hazards that would result from building in an area unsuitable for intensive development." *Id.*

¶ 46. *State ex rel. Nagawicka Island Corp. v. City of Delafield,* supports our conclusion that precluding any use is unreasonable. 117 Wis. 2d 23, 343 N.W.2d 816 (Ct. App. 1983). In *Nagawicka Island,* the landowner was prohibited from building because the island was only two acres and zoned A-1, which prevented building on lots of less than three acres. *Id.* at 24–25. The court of appeals concluded that "when zoning classifications restrict the enjoyment of property to such an extent

that it cannot be used for any reasonable purpose, a taking without due process occurs." *Id.* at 27. While we do not rely on our takings clause jurisprudence today, as the court of appeals did in *Nagawicka Island,* the rationale employed supports our conclusion that providing no use is an unreasonable restriction.

¶ 47. In the case at hand, we conclude that the ordinance governing the B-2 District is arbitrary and unreasonable, in that it precludes any use as of right in the B-2 District and such limitation bears no substantial relation to the public health, safety, morals or general welfare. Unlike in *Dur-Bar Realty* where restricting uses in a flood plain was directly tied to the health, safety, morals or general welfare of the public, no justification exists for precluding all uses as of right in the B-2 District.

### 2. Zoning treatises and journals

¶ 48. Leading zoning treatises support the notion that standard zoning practices contemplate permitted uses as of right that can be expanded upon by the administrative zoning function. Professor Mandelker writes:

> The drafters of the Standard Zoning Act clearly contemplated a zoning process in which *the uses designated by the zoning ordinance were permitted "as of right," but they also provided for an administrative zoning function.* The Standard Act delegated this function to the board of adjustment. *It authorized the board to grant* variances from the zoning ordinance in cases of hardship, as defined in the Act, and to grant special exceptions authorized by provisions in the zoning ordinance. Many zoning ordinances use the term *"special"* or *"conditional" use* rather than "special exception. . . ."

Mandelker, *supra,* § 6.39, at 6–44 (emphasis added).

¶ 49. In *Anderson's American Law of Zoning,* the observation is also made that "[m]ost ordinances impose a broad division of land uses," and, in addition, those ordinances then provide that "specified uses may be established or maintained" pursuant to a special permit. 3 Young, *supra,* § 21.01, at 693–94.[20] *The Law of Municipal Corporations* provides, "[z]oning ordinances that rely on the conditional use mechanism retain the usual residential, commercial and industrial zones specifying the uses permitted in each zone, and, in addition, establish conditional uses for each zone." 8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.159 (3d ed. 2000).

¶ 50. Current zoning journals also support the conclusion that the common, accepted zoning practice is to provide permitted uses as of right and then, in addition to permitted uses, the ordinance may provide for conditional uses. For example, in an article of Zoning Practice, the author discusses the relationship between permitted and conditional uses. *See* Gail Easley, *Conditional Uses: Using Discretion, Hoping for Certainty,* American Planning Association Zoning Practice, May 2006. The author writes, "[t]he fundamental purpose of the zoning ordinance is to establish districts (zones) which have a common set of permissible uses and a common set of site design standards within each."

---

[20] *See, e.g.,* 5 Weinstein, *supra,* § 32.46, at 78–84 (providing both permitted, accessory, and conditional uses in a residential district); § 32.49, at 94–102 (providing both permitted and conditional uses in a commercial district); § 32.50, at 103–04 (providing both permitted and conditional uses in a general office district); § 32.51, at 104–09 (providing both permitted and conditional uses in highway commercial district); § 32.52, at 110–16 (providing permitted, accessory, and conditional uses in the industrial district).

*Id.* at 2. Permissible uses are " 'by-right' uses," i.e., "the uses are named in the zoning ordinance and a property owner has the right to establish the use so long as it conforms to the standards and criteria of the zoning ordinance." *Id.* at 2–3.

¶ 51. The author then contrasts permitted uses with conditional uses and notes that

> there are often uses that would be welcome within the zoning district if additional standards could prevent them from undermining the purpose and intent of the district. . . . Business and industrial districts also benefit from uses other than those permitted by right. For example, day care centers and restaurants are welcome near employment centers.

*Id.* at 3.

¶ 52. An article of Zoning News[21] cautions about heavy or exclusive reliance on conditional use permits. The author wrote:

> Some ordinances rely too much on special and/or conditional uses. Most land uses should be as-of-right, subject to compliance with clear and objective standards and criteria for that particular use category or zoning district. Discretionary approvals should be reserved for unique uses that defy regulations by objective standards. The routine employment of special uses, especially without (or with few) standards or criteria, opens up both individual zoning decisions and the zoning ordinance provision itself to constitutional challenges as being arbitrary and capricious. Even where such a challenge would not necessarily succeed, the

[21] Zoning News was a publication of the American Planning Association. It is now known as the Zoning Practice, which is also a publication of the American Planning Association.

uncertainty to landowners and citizens alike created by discretionary and/or standardless zoning review should be avoided.

John B. Bredin, *Common Problems with Zoning Ordinances,* American Planning Association Zoning News, Nov. 2002, at 2.

### 3. The Town of Rhine's Ordinance

¶ 53. While the ordinance section at issue in this case does not provide for any use as of right, other sections of the Town of Rhine's zoning ordinance follows the more traditional practice of first outlining permitted uses and then, in addition to permitted uses, providing for conditional uses.[22] For example, consider the permitted and conditional uses in the Town of Rhine Municipal Code for the following districts:

> (1) The Agricultural Land Districts. *See* Town of Rhine, Wis., Municipal Code § 4.05(2)(a) and (b) (providing such things as grazing, horticulture, and nature trails as permitted uses and providing such things as commercial stud housing and operation as a conditional use).

> (2) The Residential Districts. *See* Town of Rhine, Wis., Municipal Code §§ 4.06(1)(a) and (b), 4.06(2)(a) and (b) (providing such things as one or two-family dwellings as a permitted use and providing such things as home occupations, involving the conduct of business on the premises, as a conditional use).

> (3) Conservancy Districts. *See* Town of Rhine, Wis., Municipal Code §§ 4.07(1)(c) and (d), 4.07(2)(c) and (d)

[22] *See* Town of Rhine, Wis., Municipal Code ch. 4, available at http://www.co.sheboygan.wi.us/html/d_planning_zoning.htm (updated 04/05/06). Click on Rhine Zoning Ordinance.

(providing such things as forestry and fur skin production as permitted use and providing all buildings or structures and any use of a residence for a home occupation as a conditional use).

(4) Commercial Districts. *See* Town of Rhine, Wis., Municipal Code § 4.08(1)(b) and (c) (providing such things as food stores, clinics, and business offices as permitted uses and providing such things as alcoholic beverages stores, automotive service, and bars as conditional uses).

## E. The Town of Rhine's remaining arguments

¶ 54. The Town of Rhine asserts that there are permitted uses in the B-2 District in that the landowners can use the property without a conditional use permit, e.g., "recreational uses have always been allowed as incidental to the rural nature of certain types of property, especially in relatively undeveloped areas as exist in the Town of Rhine." However, nowhere is that outlined in the ordinance at issue. It is only in the newly amended ordinance that these allowances are made.[23]

---

[23] On April 5, 2006, the Town of Rhine amended its own B-2 District ordinance to provide for permitted uses in the B-2 District. *See* Town of Rhine, Wis., Municipal Code § 4.08(2)(b)1. and 2. Subsection (b) provides, "Permitted uses. The following are permitted uses in the B-2 District:"

1. Agriculture. Those uses permitted in the Agricultural Land Districts pursuant to Section 4.05(2)(a), except that no structures may be built without first obtaining a conditional use permit pursuant to Section 4.09.

2. Passive Outdoor Recreation. Passive, outdoor, recreational land uses such as arboretums, natural areas, wildlife areas, hiking trails, bicycle trails, cross-country ski trails, horse trails, picnic areas, gardens, fishing and hunting areas, and other similar land uses.

The version of the ordinance governing this case, however, states, "[t]here are no permitted uses in the B-2 District."[24] Furthermore, at the January 6, 2004 meeting, Chairman Sager stated that B-2 zones require a conditional use permit "for any use of the land." Therefore, it is clear that a landowner must acquire a conditional use permit, solely at the discretion of the Town of Rhine, in order to use the property in any way.

¶ 55. The Town of Rhine argues, under the code before us today, that conditional uses are permitted uses because once the standards have been satisfied a landowner is "entitled" to the conditional use. We disagree. First, we find authority contrary to the Town of Rhine's position. *See, e.g., S. Kemble Fischer Realty Trust v. Board of Appeals of Concord,* 402 N.E.2d 100, 103 (Mass. App. 1980) (stating that "[n]o one, of course, has an absolute right to a special permit"); S. Mark White, *Classifying and Defining Uses and Building*

---

[24] While the ordinance at issue has been amended, other Wisconsin municipalities seemingly have similar ordinances in place. In general, constitutional challenges to repealed legislation are considered moot. *See Kremens v. Bartley,* 431 U.S. 119, 127–29 (1977). However, unlike state or federal legislation, municipal ordinance sections like the one at issue here may still exist in other municipalities within the state. At times, we may consider a "moot issue" if it is of "great public importance or arises frequently enough to warrant a definitive decision to guide the circuit courts." *State ex rel. Riesch v. Schwarz,* 2005 WI 11, ¶ 12, 278 Wis. 2d 24, 692 N.W.2d 219. Because other municipalities utilize similar ordinances and the Town of Rhine may easily revert to its previous version, we review and render a decision on the issues at hand. If other municipalities have such ordinances in place and, like here, there is no substantial relation to public health, safety, morals or general welfare, those ordinances could be subject to constitutional challenge.

39

*Forms: Land-Use Coding for Zoning Regulations,*
American Planning Association Zoning Practice, Sept.
2005, at 8 (distinguishing between permitted uses as of
right and conditional uses). Second, no authority cited
by the Town of Rhine suggests that conditional uses are
the same as permitted uses. To support its argument,
the Town of Rhine relies on *Delta Biological Resources,
Inc. v. Board of Zoning Appeals of City of Milwaukee,*
160 Wis. 2d 905, 910–11, 467 N.W.2d 164 (Ct. App.
1991). However, *Delta* simply does not support the
Town of Rhine's contention that conditional uses are
permitted uses. In *Delta,* the court of appeals, relying
on *Skelly Oil Co.,* stated: "A special or conditional use
permit is one which the zoning code allows. A special
use permit allows a property owner to put his or her
property to a use expressly permitted by the zoning
ordinance, but only if certain conditions are met." *Delta,*
160 Wis. 2d at 910 (footnote omitted) (citing *Skelly Oil
Co.,* 58 Wis. 2d at 700–01).

¶ 56. The Town of Rhine's argument is without
merit. Permitted uses and conditional uses are differ-
ent. Even though conditional uses may be authorized
pursuant to the ordinance, that does not render them
uses as of right. *See* Gail Easley, *Conditional Uses:
Using Discretion, Hoping for Certainty,* American Plan-
ning Association Zoning Practice, May 2006, at 8 (dis-
tinguishing between permitted uses as of right and
conditional uses). Conditional uses may be expressly
permitted by the ordinance so long as the conditions are
met, *id.,* but this does not render them "permitted
uses."

¶ 57. The Town of Rhine, citing to *Primeco Com-
munications v. City of Mequon,* argues that an entitle-
ment to a conditional use exists once the landowner

submits the required information in reasonable compliance with the requirements of a particular conditional use ordinance. 242 F. Supp. 2d 567 (E.D. 2003). *Primeco,* however, does not support this argument. In *Primeco,* the district court stated:

> Under Wisconsin law, a conditional use is one that is not inherently incompatible with a particular area, but which might create problems if permitted to locate there as a matter of right.
>
> Zoning ordinances that rely on the conditional use mechanism retain the usual residential, commercial and industrial zones *specifying the uses permitted in each zone, and, in addition, establish conditional uses* for each zone, which are permitted within the zone only if approved by the local governmental body. In other words, a conditional use permit allows property to be put to a purpose that the zoning ordinance conditionally allows.

*Id.* at 576 (citations omitted) (emphasis added).

¶ 58. Even if an entitlement could be created under a conditional use permit, the Town of Rhine's argument presumes that the standards here are clear and specific enough that once complied with, the conditional use permit shall be issued. However, while we do not decide the constitutionality of the conditional use permit section, i.e., Municipal Code § 4.09(4), that section does not provide certainty. For example, the following standards for obtaining a conditional use permit are subject to significant interpretation: (1) stabilize and protect property values and the tax base; (2) recognize the needs of agriculture, forestry, industry, and business in future growth; (3) preserve natural growth and cover and promote the natural beauty of the township. *See* Town of Rhine, Wis.; Municipal Code § 4.01(2). How does a landowner, who applies for a conditional use permit, establish

that a garbage dump or salvage yard will comply with these requirements, or others in § 4.01(2), so to "entitle" the landowner to a conditional use permit? These standards are simply not specific enough that one can reasonably say that any use as of right exists under the B-2 District, which has no permitted uses.

¶ 59. In addition, the language of this ordinance does not support the Town of Rhine's argument that the landowner is entitled to a conditional use permit as of right. No language exists in Municipal Codes § 4.08(2), B-2 District, or § 4.09, Conditional uses, that would create an entitlement to a conditional use permit. The ordinance does not state for example: If all requirements are met, the conditional use permit shall be granted. Furthermore, while discussing rules that generally govern conditional uses, *Anderson's American Law of Zoning* states, "[t]he designation of a use in a zoning district as a conditional use does not constitute an authorization or assurance that such use will be approved." 5 Alan C. Weinstein, *Anderson's American Law of Zoning* § 34.23, at 573 (4th ed. 1997). While perhaps not dispositive, this assertion casts doubt on the Town of Rhine's entitlement argument.

¶ 60. The Town of Rhine also argues that planned unit development zoning is the functional equivalent to Municipal Code § 4.08(2)(a), "B-2 Commercial Manufacturing or Processing." However, planned unit development districts are different because unlike the case before this court, planned unit development districts may only be established with the consent of the landowner. *See* Wis. Stat. § 62.23(7)(b) (discussing planned unit developments). The Town of Rhine argues that future landowners in planned unit development dis-

tricts are bound by the restricted uses entered into by the previous landowner. This, however, is an economic and quantifiable decision by the purchaser. It is not that such land has no use, it is that such land has designated rights and obligations. The landowners in the B-2 District did not make a choice to eliminate all permitted uses. Rather, the landowners are precluded from any use unless the Town of Rhine grants a conditional use permit. While the landowner who chooses to purchase land in the B-2 District has notice of the excessive restriction in the B-2 District, this does not, as we see here, preclude a constitutional challenge to the ordinance.

¶ 61. The Town of Rhine asserts that this matter is not properly before the court because the Club did not follow through with seeking a conditional use permit. Therefore, the Town of Rhine argues that we cannot determine if the Club was denied a conditional use permit for unreasonable or arbitrary reasons. The Town of Rhine argues that if the Club was denied a conditional use permit for arbitrary or unreasonable reasons, the Club may have a regulatory taking, or as-applied challenge. We do not disagree that one of these claims may be available if the Club was improperly denied a conditional use permit, but the case at hand is a facial substantive due process challenge to the B-2 zoning ordinance; this is not a challenge to the conditional use permit section of the ordinance, and it is neither a takings challenge nor an as-applied challenge.[25]

---

[25] *Anderson's American Law of Zoning* distinguishes between a taking and substantive due process challenge. It provides:

¶ 62. To be clear, after today, municipalities still have ample authority to regulate land use—and they should. Such regulation is an appropriate legislative function; it can serve to protect the health, safety and welfare of the public, and it encourages well reasoned growth. The issuance of conditional use permits also is an appropriate function for municipalities. Municipalities certainly have broad authority to restrict land use, but the district at issue today provides for no permitted

---

It is important to understand the difference between taking claims and substantive due process claims. As discussed in the previous chapter, an ordinance will be struck down, despite the presumption of validity for legislative acts, if it is found to be unreasonable or arbitrary. In general, a zoning ordinance or other police power land use restriction must be reasonably related to serving the public health, safety, or general welfare. If a land use restriction is unreasonable or irrational, it may be found to violate the substantive component of the due process clause. However, irrationality is not the standard for evaluating a taking claim.

The Supreme Court has added confusion to the matter by repeatedly stating in recent cases that a taking is established if an ordinance does not "substantially advance legitimate state interests . . . or denies an owner economically viable use of his land." The Court has never satisfactorily explained what the first part of the test means. However, writing for the majority in *Nollan v. California Coastal Commission,* Justice Scalia expressly stated that the taking test requires stricter review of government action than the "rational relationship" test applied to most due process and equal protection claims.

An important difference under the Constitution is that "just compensation" must be paid to the landowner who has suffered a taking. A substantive due process violation does not trigger the compensation requirement. . . .

It is very common for a landowner to assert taking and substantive due process claims in the same action, and to leave it to the court to sort out the differences.

1 Young, *supra,* § 3A.04, at 216–17.

use as of right, and the only use is garnered through the possibility of obtaining a conditional use permit. No reasonable justification exists for such excessive government control and restriction—especially when that government control is set against land use rights, and the control bears no substantial relation to the public health, safety, morals or general welfare.

¶ 63. The Town of Rhine argues that being able to restrict where less desirable uses develop is "the fundamental methodology of Euclidian zoning." We do not disagree, and moreover, we do not seek to limit the power of a town to regulate where and under what conditions land may be used. However, the Town of Rhine, in this case, fails to acknowledge that it can both regulate where undesirable uses develop, and it can provide for permitted uses as of right.

¶ 64. Precluding any permitted use and then only providing generalized standards for obtaining a conditional use permit opens the door to favoritism and discrimination. Under this scenario, a town, pursuant to the ordinance, may arbitrarily preclude any activity on the land in question because (1) there are no permitted uses as a matter of right; and (2) if obtaining a conditional use permit is completely within the discretion of a town, judicial review of a denial is significantly limited because of the non-specific nature of the conditional use standards. As a result, if such an ordinance was deemed acceptable, towns could preclude all uses at will and in a manner that virtually precludes any meaningful judicial review. Such a determination could open the door to abuse. If permitted uses exist as of right, the impact of denying conditional uses is significantly decreased because the landowner has permitted uses as of right.

¶ 65. The facial, constitutional challenge here is sustained. This ordinance is not in balance with the rights of landowners. Because the landowners have demonstrated beyond a reasonable doubt that the ordinance at issue does not provide for any uses as of right, and this restriction in the B-2 District is arbitrary and unreasonable in the sense that it does not bear a substantial relation to public health, safety, morals or general welfare, we conclude that Municipal Code § 4.08(2)(a), the B-2 District, is unconstitutional on its face. Accordingly, the Club has met its burden.

IV. NUISANCE

¶ 66. The circuit court concluded that the Town of Rhine's allegation that its public nuisance ordinance was violated was actually the Town of Rhine's attempt to abate a private nuisance. The circuit court did not reach its decision by applying the ordinance's language. Instead, the circuit court concluded that the violations were for a "public nuisance." The circuit court, cited to *Milwaukee Metropolitan Sewerage District v. City of Milwaukee,* 2005 WI 8, 277 Wis. 2d 635, 691 N.W.2d 658, and stated that a nuisance is a public nuisance if "the condition or activity interferes with the public right or use of public space." The circuit court then concluded that because the property at issue was not a public place, and the Club's activities did not affect the entire community, the nuisance could not be a public nuisance.

¶ 67. Here, the circuit court erred because it did not apply the definition of "public nuisance" as stated in the Town of Rhine's ordinance. Instead of applying the ordinance language, the circuit court applied a

common-law definition of "nuisance." The Town of Rhine, Wis., Municipal Code § 2.02, "Public Nuisance," differs from the common-law definition and provides as follows:

> 2.02 *DEFINITIONS.* (1) PUBLIC NUISANCE. A public nuisance is a thing, act, occupation, condition or use of property which shall continue for such length of time as to (a) Substantially annoy, injure or endanger the comfort, health, repose or safety of the public; (b) In any way render the public insecure in life or in the use of property; (c) Greatly offend the public morals or decency; (d) Unlawfully and substantially interfere with, obstruct or tend to obstruct or render dangerous for passage any street, alley, highway, navigable body of water or other public way or the use of public property.

¶ 68. Accordingly, we reverse and remand to the circuit court for a new hearing on the nuisance action wherein the court will decide the issues based upon the Town of Rhine, Wis., Municipal Code.

## V. CONCLUSION

¶ 69. We conclude that the Town of Rhine, Wis., Municipal Code § 4.08(2)(a), the B-2 District, is unconstitutional on its face because it is arbitrary and unreasonable in that it precludes any use as of right in the B-2 District and such limitation bears no substantial relation to the public health, safety, morals or general welfare. We further conclude that the circuit court applied a common-law definition of "nuisance" rather than the definition of "public nuisance" articulated in Town of Rhine, Wis., Municipal Code § 2.02. As a result, we remand to the circuit court for a new hearing on the public nuisance claim.

*By the Court.*—The order of the circuit court is affirmed in part, reversed in part, and cause remanded to the circuit court.

¶ 70. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). The majority opinion declares that the instant case is moot. Majority op., ¶ 54 n.23. Nevertheless the majority writes on, characterizing the issue of the constitutionality of a "permit use only zone" as one "of great public importance." Simultaneously the majority opinion acknowledges that it cannot, and does not, determine the constitutionality of any other ordinance creating a "permit use only zone" similar to that of the Town of Rhine. *See* majority op., ¶ 54 n.23. Each "permit use only zone" ordinance, according to the majority opinion, must be gauged individually to determine to whether the ordinance has a substantial relation to the public health, safety, morals or general welfare.

¶ 71. I write for three reasons:

¶ 72. First, I want to stress that the wisdom of a zoning ordinance is a decision for the municipality, not for this court.[1]

¶ 73. Second, nothing in this opinion should be read to imply that the ordinance at issue is struck down because the majority opinion characterizes the Town of Rhine's zoning ordinance as uncommon.[2] The majority opinion is mistaken that the Town of Rhine ordinance is very unusual.[3] In any event, I do not read the majority opinion as stating or implying that only ordinances adopted by a majority of municipalities can pass constitutional muster in this court.

---

[1] *See* majority op., ¶ 26.

[2] *See, e.g.,* majority op., ¶¶ 39, 40, 50.

[3] *See* Brief and Appendix of Wisconsin Counties Association at 5–8 (citing zoning ordinances similar to the Town of Rhine's from 11 municipalities and counties in Wisconsin).

¶ 74. Third, I want to emphasize the precepts to be gleaned from this lengthy opinion, many of which are basic, well-known principles of law that are applied in the present case. The teachings of the majority opinion may be summarized as follows:

1. A zoning ordinance, including a "permit use only zone," is "presumed valid and must be liberally construed in favor of the municipality." Majority op., ¶ 26. An ordinance "will be held constitutional [as a matter of substantive due process] unless the contrary is shown beyond a reasonable doubt." Majority op., ¶ 26.

2. The challenge to the ordinance at issue is a facial substantive due process challenge, not an as applied challenge, and not an eminent domain taking challenge.[4] The majority opinion applies, in keeping with precedent, a rational basis test to determine the validity of a law challenged on substantive due process grounds.[5]

---

[4] *See, e.g.,* majority op. ¶¶ 34, 47, 61. Several cases upon which the majority opinion relies treat the challenge as an as applied or a takings challenge. *See, e.g.,* majority op. ¶¶ 40, 47.

It is very difficult to prevail upon a facial challenge to a statute or ordinance. With a facial challenge, the challenger must show that the ordinance cannot be enforced under any circumstances. *See Olson v. Town of Cottage Grove,* 2008 WI 51, ¶ 44 n.9, 309 Wis. 2d 365, 749 N.W.2d 211 (" 'Facial challenge' is defined as: 'A claim that a statute . . . always operates unconstitutionally.' ") (quoting *Black's Law Dictionary* 223 (7th ed. 1999). Although I question whether the defendants' challenge is properly considered a "facial" challenge, I accept the defendants' characterization of their challenge for purposes of this review. The majority opinion does not address any challenge to the "vagueness" of the standards for granting a conditional use. *See, e.g.,* majority op. ¶ 58.

[5] *See, e.g.,* majority op., ¶¶ 28–29, 34, 37.

3. An ordinance, including a "permit use only zone," will be invalidated as a matter of substantive due process under the rational basis test only if it is clearly arbitrary and unreasonable, having "no substantial relation to the public health, safety, moral or general welfare." Majority op., ¶ 2.[6] In applying the rational basis test, the court looks for support for the law that is challenged.[7] The support for the law need not be expressed on the face of the law.

4. A "permit use only zone" is constitutional, as a matter of substantive due process, if it bears a substantial relation to the public health, safety, moral or general welfare.[8] A "permit use only zone" is unconstitutional as a matter of substantive due process when it is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, moral or general welfare.[9]

5. The "permit use only zone" at issue in the instance case is unconstitutional because nothing in the record or in the Town's arguments describes a relation between the "permit use only zone" and the public health, safety, morals or general welfare.[10] The court has not independently found support for the ordinance.

6. The majority opinion does not determine the constitutionality of ordinances of other communities similar to the Town of Rhine's ordinance at issue in the instant case. Each such ordinance has to be examined individually to determine whether it bears a substan-

---

[6] *See, e.g.,* majority op., ¶¶ 26, 34–38, 65.

[7] *Ferdon v. Wis. Patients Comp. Fund,* 2005 WI 125, ¶ 184, 284 Wis. 2d 573, 701 N.W.2d 440.

[8] *See, e.g.,* majority op., ¶¶ 43–45.

[9] *See, e.g.,* majority op., ¶¶ 40–42, 46.

[10] *See, e.g.,* majority op. ¶¶ 2, 65.

tial relation to the public health, safety, morals or general welfare. In other words, the validity of an ordinance similar to that of the Town of Rhine's shall be determined on case-by-case basis, with the ordinance liberally construed in favor of the municipality and entitled to a presumption in favor of its validity.[11]

¶ 75. I concur in the court's mandate but write separately for the reasons set forth.

___

[11] *See, e.g.,* majority op. ¶ 54 n.23.