BLANCHARD, J.
¶ 1 This case involves a conditional use permit issued by a Dane County zoning committee that allows the operator of a crude oil pipeline to significantly expand the volume of oil pumped through the line. The permit contains conditions requiring Enbridge Energy Company to "procure and maintain" insurance with detailed specifications that would, in the view of the zoning committee, ensure the availability of sufficient funds for remediation, clean up, and payment for damages in the event of a crude oil spill.[1]
¶ 2 One notable feature of this case is that the state legislature enacted a new law in the midst of the County's consideration of the Enbridge permit. The new state law places a limitation on the insurance requirements that counties can include in conditional use permits issued to operators of interstate hazardous liquid pipelines, such as Enbridge, in one particular circumstance. See 2015 Wisconsin Act 55, § 1923e (Eff. July 14, 2015); WIS. STAT . §§ 59.70(25), 59.69(2)(bs) (2015-16).[2] More specifically, under the Act 55 insurance limitation, a county may not require an interstate hazardous liquid pipeline operator to obtain insurance if the operator "carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability." § 59.70(25).
¶ 3 After the Act 55 insurance limitation took effect, Enbridge argued to the zoning committee that the new law required the committee to sever the insurance conditions from the permit, because Enbridge alleged that it "carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability."
¶ 4 The zoning committee voted to deny the request to sever the insurance conditions from the permit. The Dane County Board of Supervisors voted to sustain this zoning committee decision. In this certiorari review action, Enbridge relies on Act 55 to challenge the decision of the zoning committee to retain the insurance conditions in the permit.
¶ 5 A second notable feature of this case involves the role of seven pipeline-area landowners in both the certiorari review action and in a separate action that the landowners filed seeking an injunction to enforce the insurance conditions in the permit. The circuit court consolidated the landowners' injunction action and Enbridge's certiorari review action into this single case, and permitted the landowners to intervene and defend the county-required insurance conditions.
¶ 6 The circuit court dismissed the landowners' action and granted Enbridge the relief it seeks in the certiorari action, namely, severing the insurance conditions based on Act 55, leaving all other permit conditions in place.
¶ 7 We first conclude that the landowners are entitled to address all issues in the certiorari review action, as well as to pursue enforcement of proper permit conditions in the injunction action. Then, we reverse the order severing the insurance conditions from the permit. We agree with the landowners that the zoning committee proceeded under two separate incorrect interpretations of the Act 55 insurance limitation involving what a pipeline operator must show in order to trigger insurance limitation. We conclude that the operator must show that: (1) the operator "carries" the insurance specified in Act 55, making this showing initially and at all times required by the permit; and (2) the operator carries liability insurance for "abrupt or immediate" pollution and "unexpected and intended" pollution. We further conclude that Enbridge failed to make either showing.
¶ 8 Turning to the remedy, we conclude that it is necessary to remand to the circuit court, with directions to return this matter to the zoning committee, so that the committee can determine, for the first time applying these correct interpretations of the Act 55 insurance limitation, whether a permit should be issued to Enbridge that contains conditions sufficient to satisfy permitting standards established by ordinance. See DANE COUNTY ORDINANCE § 10.225(2)(h) (Apr. 30, 2017) (listing six safety and other standards).
BACKGROUND
¶ 9 The following pertinent facts are taken from the record.
Enbridge Project And Permit Application
¶ 10 For approximately a decade, Enbridge has owned and operated an interstate pipeline for the transport of crude oil, 12 miles of which runs through northeast Dane County, between Marshall and Waterloo.[3] In August 2014, Enbridge applied to the County for a conditional use permit to allow expanded volume through the pipeline, which includes enlargement of a pumping station in the Town of Medina. The project is located within one of the County's "exclusive agricultural zoning districts," and, under County ordinances, operation of the pipeline is a conditional use in such a district. See DANE COUNTY ORDINANCE § 10.123(2)(b), (3)(c). As a result, Enbridge cannot expand pipeline volume without a conditional use permit from Dane County.
Zoning Committee Action Leading to April 2015 Permit Approval
¶ 11 The Enbridge permit application was taken up by the Dane County Zoning and Land Regulation Committee. In considering the Enbridge application, the zoning committee applied Dane County Ordinance § 10.255(2)(h), which lists six considerations for the issuance of a conditional use permit, including: potential risks to "the public health, safety, comfort or general welfare"; potential substantial impairment or diminishment of already permitted uses of other property in the neighborhood; and potential impediments to "normal and orderly development and improvement of the surrounding property for uses permitted in the district."
¶ 12 At a November 2014 meeting, the zoning committee directed county staff to refine a potential permit condition that would require Enbridge to obtain "a surety bond for assurances of spill clean up due to the increase[d] pressure that the pumping station will create on the existing line," which would "list Dane County as an insure[d]." The zoning committee also asked Enbridge to "produce documentation regarding proof of insurance."
¶ 13 At a January 27, 2015 meeting, the zoning committee considered, but did not pass, a motion to approve the permit with conditions that would include the County "as a named insured party of comprehensive Environmental Impairment Liability insurance" purchased by Enbridge, in order to ensure sufficient resources to cover "complete cleanup" and remediation in the event of a catastrophic spill. The committee decided to investigate "as soon as possible" the retention of an insurance expert, as well as an environmental risk assessment.
¶ 14 In a written report to the committee dated April 8, 2015, David Dybdahl, a chartered property casualty underwriter, summarized and analyzed Enbridge's purported general liability insurance coverage.[4] Dybdahl explained that he understood the zoning committee's goal to be to ensure that "Enbridge, or other reliable sources, have money available to ensure the timely remediation and restoration of the environment in the event of a spill," "to pay for the damages they may incur as a result of an oil spill at the pumping station," and to avoid "unfunded potential liability or expenses to the county for granting a Conditional Use Permit or as a result of a spill from the pumping station."
¶ 15 Dybdahl recommended that the zoning committee include conditions in any permit that would obligate Enbridge to "procure and maintain" two "liability insurance policies over the course of the permit duration":
• A general liability insurance policy . This policy would have a $100-million limit and a pollution exclusion, but with "a time element exception to the pollution exclusion." Dybdahl stated that, under a "time element exception," coverage for pollution is excluded if a pollution release is not discovered within 30 days or if Enbridge fails to report the loss to the insurer within 90 days of discovery.
• An environmental impairment liability insurance policy . This would have a $25-million limit. Dybdahl referred to this as "pollution insurance," which would "fill insurance coverage gaps created by the ever present pollution exclusions in property and liability insurance policies," such as the general liability policy referenced above.
¶ 16 Enbridge represented to Dybdahl that the first recommended policy, the $100-million general liability policy, was "currently in place," but that Enbridge would have to purchase the second policy he recommended, the $25-million environmental impairment policy.
¶ 17 Dybdahl recommended that the County require Enbridge to obtain the environmental impairment policy because a general liability policy will contain an "obvious gap" due to its "time element exception" (the 30-days-to-discover and 90-days-to-report requirements described above). In addition, Dybdahl opined that Enbridge needed to obtain and maintain an environmental impairment policy to provide for "clean-up costs, restoration costs, ... and damage to natural resources" in the event of a spill, because a general liability policy would cover only direct physical loss.
¶ 18 As context for his opinions, Dybdahl stated that he took into account an earlier incident involving Enbridge: a 2010 spill on Michigan's Kalamazoo River, which Dybdahl reported had so far resulted in "loss costs" of $1.25 billion. Dybdahl noted that the $125 million in total coverage that he recommended represents 10 percent of the Kalamazoo River spill "loss costs."
¶ 19 At a hearing in April 2015, the zoning committee extensively discussed insurance coverage, including the Dybdahl report, and subsequently approved a permit containing 12 conditions. The permit listed the six factors from Dane County Ordinance § 10.255(2)(h) that we reference in ¶ 11 above. The permit stated that it would become "effective" on April 21, 2015, and contained no end date or length of duration.
¶ 20 Turning to the insurance conditions at issue here, the approved permit included two closely related conditions, obviously intended to mirror the recommendations from Dybdahl:
7. Enbridge shall procure and maintain liability insurance as follows: $100,000,000 limits in General Liability insurance with a time element exception to the pollution exclusion (currently in place), and $25,000,000 of Environmental Impairment Liability insurance. Enbridge shall list Dane County as an Additional Insured on the total $125,000,000 of combined liability insurance.
8. The required General Liability Insurance and Environmental Impairment Liability insurances shall meet the technical insurance specifications listed in Appendix A of [Dybdahl's] report, which is incorporated herein by reference.[5]
We will call these "permit conditions 7 and 8."
First Enbridge Appeal To County Board
¶ 21 On May 4, 2015, Enbridge appealed the zoning committee decision to the county board.[6] Enbridge argued that permit conditions 7 and 8 represent an unconstitutional interference with interstate commerce.[7] To overturn the zoning committee decision, Enbridge needed to secure the votes of three fourths of supervisors present at a county board meeting.
Act 55
¶ 22 Before the county board took up Enbridge's constitution-based appeal, the state legislature adopted a budget bill, 2015 Act 55, effective July 14, 2015, which included the following provisions:
• "A county may not require an operator of an interstate hazardous pipeline to obtain insurance if the pipeline operating company carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability." WIS. STAT . § 59.70(25).
• "As part of its approval process for granting a conditional use permit under this section, a county may not impose on a permit applicant a requirement that is expressly preempted by federal or state law." WIS. STAT . § 59.69(2)(bs).
County Reaction To Act 55 Insurance Limitation; September 2015 Zoning Committee Decision
¶ 23 In July 2015, an assistant county corporation counsel took the position that permit conditions 7 and 8 were no longer enforceable in light of the Act 55 insurance limitation. On July 24, 2015, the county zoning administrator issued to Enbridge what he purported to be a revised permit that did not contain permit conditions 7 and 8, but which was otherwise unchanged.
¶ 24 However, at a meeting on September 29, 2015, the zoning committee took the position that it alone had authority to withdraw, alter, or issue a conditional use permit, and that the zoning administrator had lacked authority to issue a revised permit to Enbridge. As its response to Act 55, the zoning committee decided to retain permit conditions 7 and 8, and to add an end note to the permit, which quoted the text of the Act 55 insurance limitation, as a signal that permit conditions 7 and 8 were unenforceable as long as the insurance limitation remains the law.[8] As with the permit that the zoning committee had issued in April 2015, the September 2015 permit contained no end date or length of duration.
Second Enbridge Appeal To County Board; December 2015 County Board Action
¶ 25 On October 19, 2015, Enbridge filed a second permit appeal to the county board, challenging the September 29 zoning committee decision. The county board addressed this appeal at a December 3, 2015 meeting. At this meeting, an attorney for Enbridge explained that its May 2015 constitution-based appeal to the county board had now gone "by the wayside." Instead, Enbridge argued that the county board should sever conditions 7 and 8 from the permit "strictly" on the ground that these conditions became unlawful upon the July 2015 effective date of the Act 55 insurance limitation. Enbridge argued that the County "cannot have a policy" of including conditions in a permit "that it knows are unlawful," and that it did not save the County's position that it "just not[ed] that maybe [the conditions are] not enforceable depending on" the possibility that a future legislature might remove or revise the Act 55 insurance limitation.
¶ 26 The Enbridge attorney also made a reliance argument. The attorney represented that, when in July 2015 the zoning administrator, in response to the enactment of Act 55, purported to sever conditions 7 and 8 from the permit, this resulted in a new, valid permit on which Enbridge could and reasonably did rely. In support of this argument, Enbridge introduced the manager of engineering and construction for the pipeline expansion project, who briefly asserted that, since July 2015, Enbridge had undertaken substantial work on the project and had "committed approximately $10 million" toward its completion.
¶ 27 During county board discussion, one supervisor suggested that it had been appropriate for the zoning committee to leave intact permit conditions 7 and 8, while inserting the end note reference to Act 55, because this stood as an expression of the judgment of county officials that the insurance required in permit conditions 7 and 8 is needed under the circumstances. Another supervisor expressed the view that permit conditions 7 and 8 should remain because there might be future changes in state statutes that would render permit conditions 7 and 8 enforceable, as they had been before Act 55 became law, and that the end note approach was reasonable because the zoning committee had issued the permit with those conditions in April 2015, before Act 55 became effective in July 2015.
¶ 28 The county board voted 27-2 to sustain the zoning committee. This left in place the permit, as revised by the zoning committee in September 2015, containing permit conditions 7 and 8, but containing the end note.
Litigation Events
¶ 29 In January 2016, Enbridge filed a petition for certiorari review in circuit court, reciting much of the background summarized to this point.[9] Enbridge asked the circuit court to require the zoning committee and the county board to sever permit conditions 7 and 8, or "alternatively, to declare them void and reinstate the July 24, 2015" permit.
¶ 30 In February 2016, the landowners filed an action seeking an injunction to enforce permit conditions 7 and 8. See WIS. STAT . § 59.69(11) ("Compliance with [county zoning ordinances] may ... be enforced by injunctional order at the suit of ... an owner of real estate within the district affected by the regulation.").
¶ 31 On April 18, 2016, the two circuit court judges assigned to preside over the two previously separate actions signed a joint order consolidating them pursuant to WIS. STAT . § 805.05(1)(b). The order stated that the landowners did not need to "obtain leave to implead in" the certiorari review action and were permitted to file responsive pleadings in the certiorari action. The circuit court judge who presided over the consolidated action ruled that the landowners were treated as intervening respondents in the certiorari action.
¶ 32 At a July 2016 hearing, the circuit court ruled orally that conditions 7 and 8 cannot properly be included in the permit, because they are preempted by the Act 55 insurance limitation. The court rejected the landowners' argument that there was no factual basis in the record to establish that Enbridge showed to the zoning committee that it carries "sudden and accidental pollution liability" insurance.
¶ 33 In light of that ruling, at the same hearing the parties discussed potential remedies. The County argued that the court should not sever permit conditions 7 and 8, but instead should remand the matter to the zoning committee so that it could determine "whether to ... issue this Conditional Use Permit without the insurance conditions because clearly those conditions were an integral part of ... issuing this permit."
¶ 34 Enbridge took the position that the court should sever permit conditions 7 and 8 but leave it otherwise unchanged. Enbridge contended that, because the zoning committee and the county board each took the position, after Act 55 became law, that "they were fine with going forward without those conditions being enforceable," there was no reason for the court to remand this matter to the zoning committee. Enbridge also made a reliance argument, contending that Enbridge relied on the representation of the zoning administrator beginning in July 2015 that it had a valid permit, without conditions 7 and 8, and therefore it would be unfair "to send this all back to start over."
¶ 35 At a resumed circuit court hearing on the remedy issue in September 2016, the court agreed with Enbridge. The court concluded that the zoning committee and the county board had indicated their agreement with Enbridge that its insurance-related representations to the committee were sufficient to trigger the Act 55 insurance limitation because, after the new law took effect, the committee and the board both indicated that they were "satisfied" with the permit as issued in April 2015, but with permit conditions 7 and 8 inoperative per the end note.
¶ 36 Consistent with these conclusions, the court entered an order in November 2016 that: granted Enbridge's certiorari petition; declared "void and unenforceable" permit conditions 7 and 8; and ordered only these conditions severed from the permit. The order also stated that the landowners, while they were "deemed Intervening Respondents" in the certiorari review action, "do not have the right in that capacity to challenge Dane County's finding that Enbridge carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability[,] having not timely sought review of that determination" by filing a separate petition for certiorari review.
¶ 37 The County and the landowners each appealed, and this court consolidated the appeals.
DISCUSSION
¶ 38 The landowners argue, in pertinent part, that the Act 55 insurance limitation was never triggered because Enbridge failed to make a sufficient showing to the zoning committee or the county board that it "carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability."
¶ 39 Before the circuit court, the County did not dispute Enbridge's position that permit conditions 7 and 8 are unenforceable, because the zoning committee and county board "took ... at face value" Enbridge's representations, made through Dybdahl, about what insurance Enbridge "carries," and that these representations were sufficient to trigger the Act 55 insurance limitation. However, at oral argument in this appeal, the County took positions that included echoing the landowners in asking that this court "attempt to interpret what" "sudden and accidental" means in the Act 55 insurance limitation, "and require Enbridge to provide proof, which they haven't yet[,] that they actually meet that standard." In any case, the County contends, whether or not Enbridge made this showing, the circuit court selected an inappropriate remedy, because the court effectively "rewrote" the permit and should have instead reversed and remanded for the zoning committee to determine whether, under a correct application of the Act 55 insurance limitation, it can issue a permit that satisfies the standards in Dane County Ordinance § 10.255(2)(h).
¶ 40 Enbridge argues that the circuit court took the correct approach on all issues, and makes arguments identified and addressed below contrary to those made by the County and the landowners.
¶ 41 We reach the following three major conclusions: (1) in both the certiorari and injunction actions, the landowners may challenge Enbridge's contention that it showed to the zoning committee that it carries the insurance specified in the Act 55 insurance limitation; (2) Enbridge failed to show to the zoning committee that, as required to trigger the Act 55 insurance limitation, it "carries" insurance that "includes" any particular coverage, and also failed to show that it carries coverage "for sudden and accidental pollution liability"; and (3) the appropriate next step is to remand to the circuit court with directions to return this matter to the zoning committee.[10]
I. WHETHER THE LANDOWNERS MAY CHALLENGE THE ENBRIDGE SHOWING THAT IT CARRIES THE INSURANCE SPECIFIED IN THE ACT 55 INSURANCE LIMITATION
¶ 42 Enbridge makes assertions using the term "standing" and an argument based on the doctrine of judicial estoppel. These contentions are all to the effect that the landowners should have been prevented in both the certiorari action and the injunction action from arguing that Enbridge failed to show to the zoning committee that it carries the insurance that triggers the Act 55 insurance limitation. We address in turn Enbridge's standing assertions and the judicial estoppel argument, resolving the arguments of Enbridge and the landowners, with the County taking no positions on these issues.
A. Whether The Landowners Lack "Standing" In The Certiorari Action
¶ 43 Enbridge asserts, using the term "standing," that the landowners may not argue in the certiorari action that Enbridge failed to show to the zoning committee that it carries the insurance specified in the Act 55 insurance limitation. But Enbridge fails to develop an argument based on standing principles. We now summarize pertinent background, and then explain what we understand Enbridge to be arguing along these lines and why we reject each assertion that Enbridge makes on this topic. In sum, we question whether Enbridge presents a developed argument, but in any case we reject whatever arguments along these lines that it may intend to make.[11]
¶ 44 As summarized in the background section above, when the circuit court entered an order consolidating the certiorari review action of Enbridge and the landowners' suit, the order stated that the landowners did not need to "obtain leave to implead in" the certiorari review action.[12] The order further stated that the landowners "shall have 20 days from entry of the consolidation order to file responsive pleadings , if any, in Enbridge v. Dane County et al. (Case No. 16-CV-8)," which is the certiorari review action. (Emphasis added.) In their responsive pleading, the landowners requested injunctive relief under WIS. STAT . § 59.69(11) and also asked for relief in the consolidated certiorari action and that the circuit court uphold the decision of the zoning committee. All of this clearly indicated permission for the landowners to freely participate in the certiorari review action and to present the circuit court with any arguments related to the Enbridge permit.
¶ 45 Consistent with this record, the circuit court judge who presided over the consolidated action explicitly treated the landowners as intervening respondents in the certiorari review action. The court stated that the landowners-as-intervenors were entitled to defend challenged actions of the zoning committee and the county board, and had "comparable status to the County in the certiorari case."[13] Thus, the circuit court explicitly permitted the landowners to make arguments in the certiorari review action "comparable" to those made by the County. The landowners used the term "intervenor-respondents" on pleadings to describe their status and, as we have indicated, made substantive arguments regarding the applicability of the Act 55 insurance limitation to the facts here.
¶ 46 However, during the final hearing in the consolidated action, the circuit court ruled that, because the landowners had not "independently sought review" of the zoning committee and county board decisions, by filing a separate certiorari review action, the landowners could not "challenge Dane County's finding that Enbridge carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability."
¶ 47 We conclude that this ruling has no basis in law. On the procedural history that we have summarized, the applicable statutes do not require, and no reasonable party would expect, the landowners to file a separate certiorari review action in order to be permitted to take substantive positions in the already pending certiorari review action in which the court had explicitly permitted them to fully participate as intervenors. See Kohler Co. v. Sogen Int'l Fund, Inc. , 2000 WI App 60, ¶ 12, 233 Wis. 2d 592, 608 N.W.2d 746 ("When a party intervenes, it becomes a full participant in the lawsuit and is treated just as if it were an original party.") (quoting Schneider v. Dumbarton Developers, Inc. , 767 F.2d 1007, 1017 (D.C. Cir. 1985) ).
¶ 48 With that background, Enbridge now asserts that the landowners are "not full parties to the certiorari proceeding." Enbridge cites nothing in the record, nor any source of authority, that would support an argument that the landowners did not have the "full participant" status described in Kohler Co. , nor that the intervention status that the court granted the landowners did not permit them to make the arguments they presented. Enbridge fails to support an argument that partial intervention status was granted in a manner that creates a standing problem for the landowners.
¶ 49 Enbridge makes two points that add nothing to the analysis. First, Enbridge points out that certiorari review is limited to the record, but the landowners make no arguments not based on the certiorari record. Second, Enbridge points out that consolidation of two actions does not merge the actions into a single action, but the landowners make their arguments, in part, as intervenors in the certiorari review action. It is true that the order that consolidated the Enbridge certiorari review action and the landowners' injunction action stated, "Consolidation of these cases shall not alter the burden of proof required or remedy available to any party in the type of action originally filed by that party." However, Enbridge fails to suggest how either limitation restricts the arguments that the landowners could make as intervenors.
¶ 50 For all of these reasons, we reject Enbridge's assertions that the landowners lack "standing" in the certiorari action.
B. Whether The Landowners Could Pursue The Injunction Action
¶ 51 In addition, even if the landowners lacked the procedural status necessary to take positions regarding the permit in the certiorari action, they have that status in the injunction action they filed. We reject the thinly developed arguments that Enbridge makes to the contrary.
¶ 52 Enbridge asserts briefly that the statute that provides the basis for the injunction action does not permit the landowners to seek enforcement of a conditional use permit. See WIS. STAT . § 59.69(11) (providing in part, "Compliance with such ordinances may also be enforced by injunctional order at the suit of ... an owner of real estate within the district affected by the regulation.") Enbridge fails to address any case law and merely quotes this statutory language. Notably, Enbridge fails to address a case cited by the landowners that we conclude directly undercuts the Enbridge argument. See Town of Cedarburg v. Shewczyk , 2003 WI App 10, ¶¶ 15-17, 259 Wis. 2d 818, 656 N.W.2d 491 (conditional use permits are governed by ordinances within a zoning code).
¶ 53 There are distinguishing features between the facts here and those in Town of Cedarburg , but its reasoning may be applied here. The question there was whether a town could seek an injunction to enjoin a violation of its zoning "ordinance or regulation" because a conditional use permit had been violated. Id. We concluded: "In short, conditional use permits are governed by ordinances within the Town's Zoning Chapter of the Code of ordinances. Thus, noncompliance with the terms of a CUP is tantamount to noncompliance with a Town Ordinance." Id. , ¶ 16. We see no reason to conclude that the situation is different here.
¶ 54 Enbridge separately and briefly asserts that WIS. STAT . § 59.69(11)"only allows citizens to supplement, and not supplant, a county's authority to enforce zoning ordinances." We discern no content to this assertion, based on the terms of § 59.69(11) or any other authority cited by Enbridge, and reject it on that basis.
C. Whether Judicial Estoppel Applies
¶ 55 Enbridge argues that the landowners took positions in the circuit court litigation that are inconsistent with its positions on appeal, and points to the doctrine of judicial estoppel, which permits courts to ignore positions taken by parties that are inconsistent with prior positions they had taken. However, this is a meritless argument, because Enbridge fails to point to a pertinent inconsistent position by the landowners.
¶ 56 Enbridge makes a frivolous argument based on an admission in the landowners' "Intervenor-Respondent[s'] Answer To Petitioners' Writ For Certiorari In Case No. 16-CV-0008." The admission was the following: "Property Owners admit that Enbridge notified the ZLR Committee that it carried $700 million of General Liability Insurance, including a Sudden and Accidental exception to the pollution exclusion." Enbridge argues that this admission was contrary to the landowners' position that Enbridge failed to make a showing to the zoning committee that triggered the Act 55 insurance limitation. However, this was an admission only that Enbridge had made this notification, not that the substance of the Enbridge assertion was true.
¶ 57 Enbridge also points to an argument that the landowners advanced in the suit they initiated. However, the Enbridge argument has no merit because the quoted landowners' argument was merely a contention that the Act 55 insurance limitation "was not made retroactive," and cannot fairly be read as a statement that Enbridge "carries" the insurance specified in the Act 55 insurance limitation.
II. WHETHER ENBRIDGE SHOWED THAT IT "CARRIES" INSURANCE THAT "INCLUDES" COVERAGE FOR "SUDDEN AND ACCIDENTAL POLLUTION LIABLITY"
¶ 58 We now address legal standards and preliminary issues pertinent to our consideration of the landowners' arguments that Enbridge failed to show to the zoning committee that it (1) "carries" insurance that "includes" (2) coverage for "sudden and accidental pollution liability." See WIS. STAT . § 59.70(25). We conclude that, under correct interpretations of Act 55, Enbridge failed to make either showing.
¶ 59 On appeal from a circuit court decision in an action for certiorari review, we review the agency decision and not any decision of the circuit court. See Kraus v. City of Waukesha Police & Fire Comm'n , 2003 WI 51, ¶ 10, 261 Wis. 2d 485, 662 N.W.2d 294.
¶ 60 As a matter of shorthand, we generally speak in terms of the showing that Enbridge made to the zoning committee, because there is no dispute that the zoning committee is the forum in which Enbridge made its factual case and because, as will become evident from the discussion that follows, we conclude that it does not matter which body or which moment in time we consider.[14]
¶ 61 The scope of our review in a certiorari action "is generally limited to whether the agency (1) acted within its jurisdiction; (2) proceeded on a correct theory of law; (3) was arbitrary, oppressive, or unreasonable; or (4) might have reasonably made the order or finding that it made based on the evidence." See Kraus , 261 Wis. 2d 485, ¶ 10. We reverse based on the second review standard because we conclude that the zoning committee proceeded under two incorrect theories of law, as we interpret the Act 55 insurance limitation.
¶ 62 We interpret statutory language in this appeal, which presents issues of law that we review de novo. See Crown Castle USA, Inc., v. Orion Constr. Grp., LLC , 2012 WI 29, ¶ 12, 339 Wis. 2d 252, 811 N.W.2d 332. This review is governed by rules that include the following. "It is the enacted law, not the unenacted intent, that is binding on the public," and "[w]e assume that the legislature's intent is expressed in the statutory language." State ex rel. Kalal v. Circuit Court for Dane Cty. , 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 662, 681 N.W.2d 110. If that language is clear, we apply it as it reads because the words used by the legislature are the best evidence of its intent. Id. , ¶¶ 45-46.
A. Whether Enbridge Showed That It "Carries" Insurance That "Includes" The Specified Insurance
¶ 63 In the first subsection that follows, we interpret the terms "carries" and "includes" in the Act 55 insurance limitation, and explain why we conclude that the limitation is triggered only after an interstate hazardous liquid pipeline operator makes a showing that it maintains the specified insurance, and makes the same showing in the future, if required by the permit, for as long as uses are exercised pursuant to the permit. In the second subsection, we explain why we conclude that Enbridge fails to demonstrate that it made such a showing.
1. The Meaning Of "Carries" And "Includes."
¶ 64 The Act 55 limitation on county-required insurance is brief. It states in its entirety (with emphasis on terms that we now analyze):
(25) INTERSTATE HAZARDOUS LIQUID PIPELINES . A county may not require an operator of an interstate hazardous liquid pipeline to obtain insurance if the pipeline operating company carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability.
WIS. STAT . § 59.70(25) (emphasis added). The statute establishes the basic rule that, if an interstate hazardous liquid pipeline operator "carries" the identified type of insurance, then a county may not require the operator to "obtain" any additional insurance, of any type. On the other hand, if the operator does not have the identified insurance, there is no insurance limitation under the statute.
¶ 65 Another feature of the Act 55 insurance limitation that bears attention is the phrase we now emphasize from the closely related provision, WIS. STAT . § 59.69(2)(bs), also included in Act 55: "As part of its approval process for granting a conditional use permit under this section, a county may not impose on a permit applicant a requirement that is expressly preempted by federal or state law." This directs us to take care that county action in this area is not limited unless the requirement at issue involves express preemption.
¶ 66 This requirement of express preemption is significant in part because the plain language of the Act 55 insurance limitation defines a strikingly narrow limitation on county action. That is, what is expressly preempted is quite specific. The phrase "may not require an operator of an interstate hazardous liquid pipeline to obtain insurance " creates only one limitation on a county once it is triggered, namely, preventing the county from requiring the operator to obtain insurance . This says nothing about other conditions related to insurance , including any reasonable requirements that counties might use related to insurance, whether or not the operator makes the required showing to trigger the Act. This is significant in part because the Act does not restrict counties in their ability to include conditions requiring proof of insurance at any time, at specified intervals, or any such. More specifically, in severing permit condition 8 in particular, the circuit court eliminated a number of detailed requirements related to insurance specified in Appendix A of Dybdahl's report, including that Enbridge provide proof of insurance "upon request by Dane County." We see no reason to conclude that the Act 55 insurance limitation, if triggered, prevents a county from requiring that the operator, upon request, provide proof that it continues to carry the specified insurance.
¶ 67 With that background, we turn to an argument of the landowners. They argue that the fact that an operator does not get the benefit of the insurance limitation unless it "carries" insurance that "includes" the identified coverage creates "a continuing duty" for an interstate hazardous liquid pipeline operator "to demonstrate compliance." And in this case, the argument effectively proceeds, a necessary precondition to application of the insurance limitation is not met, because Enbridge demonstrated to the zoning committee and the county board, at most, only that in 2015 Enbridge had carried insurance that it had purchased on an annual basis in the past, and not that it would have the Act 55-triggering insurance going forward. We agree with the landowners' interpretation of "carries" and "includes."
¶ 68 The statute does not define "carries" or "includes." The word "carries" does not otherwise appear in WIS. STAT . § 59.70 ("Environmental protection and land use") or, for that matter, any other place in ch. 59 ("Counties").
¶ 69 We now turn to the fact that WIS. STAT . § 59.69(2)(bs) directs that the insurance limitation applies in the context of conditional use permits issued by counties ("As part of its approval process for granting a conditional use permit under this section, a county may not impose on a permit applicant a requirement that is expressly preempted by federal or state law.") (emphasis added). Thus, the specific context contemplated by the legislature in the Act 55 insurance limitation involves applications to counties by interstate hazardous liquid pipeline operators for conditional use permits.
¶ 70 This directs us to consider the nature of conditional use permits. Our supreme court has made the axiomatic, perhaps self-evident, point that a valid condition in a conditional use permit must have the power to control permitted uses. See Town of Rhine v. Bizzell , 2008 WI 76, ¶¶ 20-21, 311 Wis. 2d 1, 751 N.W.2d 780. That is, a valid permit condition requires the permitted entity to exercise the permitted uses exclusively in the "controlled manner" specified through the condition:
Conditional uses are for those particular uses that a community recognizes as desirable or necessary but which the community will sanction only in a controlled manner .
A conditional use permit allows a property owner "to put his property to a use which the ordinance expressly permits when certain conditions [or standards] have been met." The degree of specificity of these standards may vary from ordinance to ordinance.
Id. (emphasis added) (citations omitted); see also AllEnergy Corp. v. Trempealeau Cty. Env't & Land Use Comm. , 2017 WI 52, ¶¶ 53-54, 375 Wis. 2d 329, 895 N.W.2d 368 (noting that Wisconsin is among the states in which "a conditional use is one that has been legislatively determined to be compatible in a particular area," and that local zoning ordinances allow local authorities to issue conditional use permits for " 'certain uses, provided certain conditions are met.' ") (quoting Delta Biological Resources, Inc. v. Board of Zoning Appeals of City of Milwaukee , 160 Wis. 2d 905, 912, 467 N.W.2d 164 (Ct. App. 1991) ).
¶ 71 Thus, a plain-meaning interpretation of the terms of the Act 55 insurance limitation, read in proper context, reveals that the insurance limitation is triggered only after it is shown that an operator has the specified insurance, and it is not sufficient to show that the operator has carried this insurance in the past or might obtain it in the future. Any other interpretation would eviscerate the power of local officials to permit uses exclusively in "controlled manners."
¶ 72 Enbridge acknowledges that "carries" and "includes" means that an operator has the specified insurance coverage as of the day a permit is issued. Enbridge suggested at oral argument that, if a county is "truly ... concerned" about what insurance coverage an interstate hazardous liquid pipeline operator carries at any time, then the county needs to include a permit condition to the following effect: after a specified period of time, the operator must prove to the county that it carries the requisite insurance. Yet Enbridge appears not to recognize that this was the case here. As noted above, the zoning committee here included a provision, which is not affected by the Act 55 insurance limitation, requiring Enbridge to produce proof of insurance upon County demand .
¶ 73 Indeed, recognition of the ability of local officials to verify insurance requirements is inherent in the Act 55 insurance limitation. That is, in using its insurance limitation formulation, the legislature presupposes that counties can include enforceable insurance conditions in permits for uses proposed by interstate hazardous liquid pipeline operators. And, of course, when as here a county issues a conditional use permit that includes a produce-proof-on-demand requirement, then the operator must produce, on demand, proof of the insurance that triggers the insurance limitation.
¶ 74 For these reasons, we conclude that the Act 55 insurance limitation is not triggered unless an operator shows, at times required by the permit, that the operator maintains the specified insurance, for as long as uses are exercised pursuant to the conditional use permit. We now turn to the question of whether Enbridge made such showing to the zoning committee, triggering the insurance limitation.
2. Enbridge Showing On "Carries" And "Includes."
¶ 75 We conclude that Enbridge failed to show to the zoning committee that it would maintain the coverage delineated in Act 55, but instead pointed only to coverage that was, at best, lapsing. Putting to the side the complication that the zoning committee relied on representations made by Dybdahl, as opposed to demonstrations of facts provided directly by Enbridge, we see no starting point in the record for an argument that Enbridge demonstrated to the zoning committee that it "carries" the insurance delineated in Act 55 that it now alleges. Nor do we see an attempt by Enbridge to make any credible argument.
¶ 76 During the zoning permit proceedings, before the circuit court, and now on appeal, Enbridge has relied exclusively on the April 2015 Dybdahl report for its factual positions regarding what insurance it carried in early 2015. That report makes consistent references to time-limited insurance policies of Enbridge. Dybdahl's report speaks in terms of the "current" Enbridge policy, what insurance "Enbridge is already purchasing," the "financial resources available in 2015," and explicitly notes that Enbridge's purported "current insurance policies will expire on May 1st" 2015. Indeed, Dybdahl stated that, "[i]t served little purpose [for Dybdahl, on behalf of the zoning committee] to closely review insurance policies that would expire in a few weeks."
¶ 77 In sum, the "carries" and "includes" aspects of the Act 55 insurance limitation were not met, and therefore the limitation was not triggered. This conclusion is dispositive in establishing that the Act 55 insurance limitation does not apply on the current record. As Enbridge acknowledges, the Act 55 insurance limitation requires that Enbridge meet the "threshold question of whether Enbridge carries CGL insurance coverage that includes coverage for sudden and accidental pollution liability." However, to assist the parties following remand, we now explain a separate reason that we conclude Enbridge has not met this threshold.
B. Whether Enbridge Showed That It Carries Coverage For Sudden And Accidental Pollution Liability
¶ 78 In the next section, we put to the side the timing issues addressed above, and consider the words that follow "carries" in the Act 55 insurance limitation: "comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability," in particular the meaning of "coverage for sudden and accidental pollution liability." We conclude, based on precedent of our supreme court, that this is reasonably interpreted to mean both "abrupt or immediate" pollution liability and "unexpected and unintended" pollution liability. In a separate section that follows we explain why we conclude that Enbridge failed to demonstrate at any time that it carried sudden and accidental pollution liability insurance.
1. The Meaning Of "Sudden And Accidental."
¶ 79 For purposes of the following discussion, we assume without deciding that, at least in early 2015, Enbridge carried a form of "comprehensive general liability insurance."[15] Further, the parties appear to agree that, as a general rule, comprehensive general liability insurance policies contain exclusions for damages resulting from pollution. See Just v. Land Reclamation, Ltd. , 155 Wis. 2d 737, 742-57, 456 N.W.2d 570 (1990) (discussing a broad range of authority addressing pollution exclusions in comprehensive general liability insurance policies). This last assumption is consistent with the Act 55 insurance limitation, which contemplates a "comprehensive general liability insurance" policy with "coverage for sudden and accidental pollution liability," presumably in the form of an exception to a standard pollution exclusion.
¶ 80 With those assumptions in mind, we turn to the landowners' argument that Enbridge failed to demonstrate to the zoning committee that the comprehensive general liability insurance policy it purported to hold in early 2015 included "coverage for sudden and accidental pollution liability." We agree with the landowners. Just provides authority directly on point, and we are directed by case law to assume the legislature had full knowledge of this authority in passing Act 55. Insurance coverage "for sudden and accidental pollution liability" can reasonably be interpreted to mean both "abrupt or immediate" and "unexpected and unintended." See Just , 155 Wis. 2d at 741-42, 745-46.
¶ 81 We begin with a settled rule of statutory interpretation. "The legislature is presumed to act with full knowledge of existing case law when it enacts a statute." Strenke v. Hogner , 2005 WI 25, ¶ 28, 279 Wis. 2d 52, 694 N.W.2d 296 (citing Czapinski v. St. Francis Hosp., Inc. , 2000 WI 80, ¶ 22, 236 Wis. 2d 316, 613 N.W.2d 120, in turn citing Ziulkowski v. Nierengarten , 210 Wis. 2d 98, 104, 565 N.W.2d 164 (Ct. App. 1997) ).
¶ 82 Applying the Strenke "full knowledge" presumption here, we conclude that the legislature used the phrase "sudden and accidental" in Act 55 with full knowledge that our supreme court has explicitly defined coverage for "sudden and accidental" pollution in this context to include pollution that causes either "abrupt or immediate" or "unexpected and unintended damages." See Just , 155 Wis. 2d at 760.[16] We now summarize Just .
¶ 83 Neighbors of a landfill alleged that it was the source of "unexpected and unintended pollution" that caused bodily injury and property damage. Id. at 741. The operator of the landfill carried a liability insurance policy that included a pollution exclusion, but this exclusion was modified by an exception, which provided coverage for "sudden and accidental" pollution damages. Id. The policy did not define "sudden and accidental." Id.
¶ 84 The insurer argued that the word "sudden," in this context, means "abrupt or immediate," and therefore there was no coverage, because there was no allegation of damage resulting from "abrupt or immediate" pollution (but instead only damage resulting from "unexpected and unintended" pollution).[17] Id. The property owners argued that "sudden" "may reasonably mean unexpected and unintended," and therefore the exception to the exclusion applied, because they alleged unexpected and unintended damages. Id.
¶ 85 After extensively canvassing persuasive case law authority and commentators, the court explained that the term "sudden and accidental" in an exception to a pollution exclusion clause in a liability insurance policy has been the subject of "substantial conflicting authority," with some authorities favoring the "abrupt or immediate" definition and others favoring the "unexpected and unintended" definition. Id. at 745-60. Details of the court's discussion regarding the pros and cons of the two sides of the interpretation argument do not matter to our analysis, because we are bound to apply the resulting interpretation, which is that "sudden and accidental" can reasonably be interpreted both ways. See id. at 741-42, 745-46. In sum, Just teaches that "sudden and accidental," when used to define an exception to a pollution exclusion clause in a liability insurance policy, can be reasonably interpreted to mean either "abrupt or immediate" or "unexpected and unintended." Just remains good law. And, this decision of our supreme court predates passage of Act 55.
¶ 86 We see no reason that the full knowledge rule, summarized above, should not apply in this circumstance to supply the meaning of the phrase "sudden and accidental" in the Act 55 insurance limitation. The instant case presents the same interpretation issue that was presented in Just , and we are not directed to any legislative enactment since Just -including the pertinent terms of Act 55-that could alter this interpretation.
¶ 87 As Enbridge conceded at oral argument, the situation would be better for Enbridge if the legislature had used the term "time element exception" in the Act 55 insurance limitation and not "sudden and accidental liability coverage." However, the legislature decided to adopt a phrase that our supreme court has defined in this context, and it is our obligation to apply the terms that the legislature decided to use, not the terms that Enbridge wishes the legislature had used.
¶ 88 Moreover, Enbridge effectively invites us to interpret the Act 55 insurance limitation based on a confusing interpretation of what Dybdahl reported to the zoning committee. The "time element exception" purportedly contained in the historical Enbridge insurance, as explained by Dybdahl, concerned the timing of Enbridge's knowledge of a potentially covered event and Enbridge's reporting of the event to the insurer in order to trigger coverage. That is significantly different from substantive language in an insurance policy (here, "sudden and accidental") that defines the breadth of coverage under that policy.
¶ 89 Enbridge argues that we should not rely on the interpretation found in Just to supply the meaning of "sudden and accidental," because Just involved an insurance coverage dispute, and not interpretation of a statute in a certiorari proceeding. However, Enbridge fails to explain how the fact that Just arose in the context of a coverage dispute creates confusion as to the meaning of the supreme court's interpretation, or provides a reason why we should not assume full legislative knowledge of the Just definition. It is true that, in this context, we are construing the language in a statute. However, the statute refers to the phrase at issue in the insurance policy context, and therefore it is appropriate that we rely on case law defining that very phrase in the context of insurance policies.
¶ 90 Enbridge makes an unclear argument based on the observation that Just "does not stand for the proposition that the phrase 'sudden and accidental' never contains a temporal element." As should be evident from what we have already said, we agree with Enbridge's observation, but fail to see how this supports an argument that Enbridge made a showing that it carries a policy with "sudden and accidental" pollution coverage.
¶ 91 Separately, Enbridge argues that the Just interpretation cannot be applied, because it conflicts with various statements made by Dybdahl to the zoning committee. It is true that Dybdahl presented a mix of historical and definitional observations to the zoning committee regarding the concept of "sudden and accidental" pollution coverage and related topics. However, we see no reason to interpret the statutory language in the light of statements Dybdahl made to the zoning committee. There is no suggestion in the record that Dybdahl provided information to the legislature in connection with the drafting of the new law. Indeed, in the circuit court and on appeal Enbridge has consistently denied knowledge regarding the provenance of the Act 55 insurance limitation. In any case, Enbridge fails to cite any rule of statutory interpretation that would permit us to rely on statements made by Dybdahl to the zoning committee in interpreting the Act 55 insurance limitation, and the well-established rules that we apply weigh strongly against doing so. See Kalal , 271 Wis. 2d 633, ¶¶ 44-45.
¶ 92 For these reasons, we conclude that the Act 55 insurance limitation is not triggered unless an operator shows, when required, that it carries pollution liability insurance that covers both "abrupt or immediate" pollution and "unexpected and unintended" pollution.
2. Enbridge Showing On "Sudden And Accidental."
¶ 93 Enbridge fails to present a developed argument that it demonstrated to the zoning committee that it carries pollution liability coverage for sudden and accidental pollution liability, and for the following reasons we conclude that it did not.
¶ 94 As referenced above, Enbridge relied on Dybdahl's summary to establish before the zoning committee what insurance coverage it purported to carry in early 2015. To repeat, Dybdahl represented to the zoning committee that Enbridge had a general liability policy with a $100-million limit and a pollution exclusion, but that this policy included a "time element exception" to the exclusion. Dybdahl represented that this "time element exception" would not apply, and thus the pollution exclusion would apply to prevent coverage, if a pollution release were not discovered within 30 days or if Enbridge failed to report the loss to the insurer within 90 days of discovery.
¶ 95 For current purposes, we assume without deciding that Enbridge made a sufficient showing that: (1) in early 2015 it carried a "general liability" policy with a "time element exception" to a pollution exclusion, as that exception was described to the zoning committee by Dybdahl; and (2) this would provide coverage for abrupt or immediate pollution. Under these assumed circumstances, stated broadly, Enbridge would have showed that it had insurance that would cover a time-limited pollution event. However, we see no reason to conclude that the purported Enbridge policy would provide coverage for unexpected and unintended pollution, for example, for pollution discovered on the 31st day after pollution commencement, as would be required for Enbridge to enjoy the benefits of the Act 55 insurance limitation.
¶ 96 For these reasons, we conclude that Enbridge failed to show that it carried a comprehensive general liability insurance policy even in 2015 that covers "unexpected and unintended" pollution liability.
¶ 97 Based on two conclusions that we have reached to this point, we reverse the decision of the circuit court dismissing the landowners' action. The circuit court ruled that, because the basis for the landowners' action was to obtain an injunction to enforce permit conditions 7 and 8, with the court's ruling that these conditions are improper, the landowners were left with no insurance conditions to try to enforce and therefore no action to pursue. First, we have explained above why we reject the Enbridge arguments that the landowners could not maintain their injunction action based on WIS. STAT . § 59.69(11). Second, we have just explained why we agree with the landowners that Enbridge has failed to show that it carries the insurance described in the Act 55 insurance limitation.
III. REMEDY
¶ 98 We now explain why we conclude that, consistent with the request for relief of the County and one of two alternative requests made by the landowners, this matter should be remanded to the circuit court, with directions that the circuit court return it to the zoning committee. The alternative remedies urged by Enbridge (severing permit conditions 7 and 8) and the landowners (that we "order the immediate restoration of" permit conditions 7 and 8) would each improperly deprive the zoning committee of the opportunity to consider what valid permit conditions, insurance or otherwise, may be adequate to satisfy the permitting standards established by ordinance, see Dane County Ordinance § 10.255(2)(h), with the benefit of a correct understanding of the Act 55 insurance limitation. The zoning committee is the body best suited to evaluate the facts and weigh appropriate conditions. As our supreme court has noted, "[t]he role of courts in zoning matters is limited because zoning is a legislative function." Town of Rhine , 311 Wis. 2d 1, ¶ 26.
¶ 99 We preface our remedy discussion by noting that our discussion would be the same whether or not there was a showing that Enbridge carries the insurance that triggers the Act 55 insurance limitation. That is, while we conclude as explained above that the zoning committee incorrectly interpreted the Act 55 insurance limitation, even if Enbridge carries the insurance referred to in Act 55, for reasons we now explain the appropriate remedy is still to return this matter to the zoning committee, to allow that body to exercise its discretion applying a correct interpretation of the Act 55 insurance limitation.
¶ 100 Central to our remedy conclusion is the undisputed fact that potential insurance conditions are integral to the consideration of a permit. That is, the insurance conditions placed in the permit by the zoning committee are necessarily intertwined with other potential conditions and integral to the permit, because less insurance coverage might logically call for more protection through different conditions and vice versa. A hypothetical based on condition 3 of the permit illustrates this integral-to-the-permit concept. Condition 3 provides that Enbridge must construct a "spill containment basin" around the pumping station sufficient to contain pipeline flow for at least 60 minutes. Depending on the insurance that the zoning committee finds Enbridge carries-including such presumably critical features as pollution exclusions and exceptions to exclusions, coverage limits, and maximum self-insured retention amounts-the committee might reasonably decide that there should be a larger spill containment basin, or perhaps a basin with additional safety or environmental protection features.[18]
¶ 101 With this integral-to-the-permit concept in mind, the County makes a persuasive argument for remand based on the fact that the zoning committee "never considered granting the [permit] without some type of insurance or financial responsibility condition," and "[t]here is no record to indicate whether [the zoning committee] did or could" issue a permit lacking insurance conditions that the committee believes satisfy the standards under Dane County Ordinance § 10.255(2)(h).
¶ 102 Much of what Enbridge argues regarding the appropriate remedy is unavailing because it fails to come to grips with this integral-to-the-permit concept.[19] For example, Enbridge argues that conditions in the permit other than conditions 7 and 8 "are uncontested." However, we have explained why potential insurance coverage of some kind-regardless of the details of insurance-related conditions that could be validly included in a permit-is integral to the permit. Therefore, severing conditions 7 and 8 would not leave only "uncontested" conditions. All evidence points to the conclusion that the County would not have issued the permit without being assured of insurance coverage, with the details regarding insurance-related conditions depending on all circumstances.
¶ 103 The County cites extensive authority, which we consider persuasive, for the general rule that the appropriate judicial remedy, when a court holds permit conditions invalid and the conditions were integral to approval of the permit, is to reverse permit approval and not to sever the invalid conditions. See, e.g., Patricia E. Salkin, 2 Am. Law Zoning § 14:17 (5th ed.) (May 2018 Update) (ch. 14, "Special and Conditional Use Permits") (citing authority from Connecticut, the District of Columbia, and Hawaii).
¶ 104 The circuit court here effectively usurped the authority of the zoning committee by determining, in the exercise of the court's discretion, that the insurance conditions 7 and 8 were not integral to the decision to grant the permit. It is for the zoning committee to exercise discretion in determining whether the permit would be granted without the insurance conditions. That is, only the zoning committee is allowed under Wisconsin law to determine which parts of the permit are insignificant enough that they may be stricken and the permit otherwise left in place.
¶ 105 In addition, elaborating on a point we have already made in construing the Act 55 insurance limitation, Enbridge fails to recognize how narrow the limitation is. It does not require a zoning committee to grant a permit whenever an operator carries the specified insurance. See WIS. STAT . § 59.70(25). Indeed, the insurance limitation does not change the authority of a zoning committee to exercise its own discretion in determining whether a permit should be granted.
¶ 106 While not on all fours with the facts here, our remedy decision is consistent with the reasoning of our supreme court in Lamar Cent'l Outdoor, Inc. v. Board of Zoning Appeals , 2005 WI 117, ¶¶ 23-24, 284 Wis. 2d 1, 700 N.W.2d 87. Lamar , like this case, involved certiorari review of a local zoning decision. Id. , ¶ 13. A zoning board of appeals denied an application for a variance to raise the height of a billboard under a standard that was subsequently altered by case law. The court held that "failure" of the zoning board "to proceed on the correct theory of law independently justifies a remand." Id. , ¶¶ 23-24. The court explained that it could "see no reason why" the board "should not have the opportunity to reevaluate the facts under the principles we laid out in" new, pertinent case law. Id. In the apparent interest of avoiding usurping the responsibility of the board of appeals, the court concluded that the board "is the body best suited to make such factual determinations, and we remand this cause to allow it to do so." Id. , ¶ 40.
¶ 107 After both the County and the landowners rely on the reasoning in Lamar , the only response Enbridge makes regarding Lamar is to point out that it "did not even involve the review of CUP decisions." However, Enbridge fails to explain why the difference between a variance issue and a conditional use permit issue matters, and more generally fails to directly address the following statement in Lamar : "failure to proceed on the correct theory of law independently justifies a remand." See id. , ¶¶ 23-24.
¶ 108 Enbridge places great weight on a decision of our supreme court, Adams v. State Livestock Facilities Siting Review Bd. , 2012 WI 85, 342 Wis. 2d 444, 820 N.W.2d 404, a case which, unlike Lamar , did not involve a certiorari review action. We summarize Adams at some length because this reveals what we see as a complete disconnect between the context in that case and the context here.
¶ 109 Adams involved application of the Siting Law, WIS. STAT . § 93.90 (2003-04), which was created by the legislature to "strictly limit[ ] the ability of political subdivisions to regulate the livestock facility siting process," and mandating the issuance of permits unless certain findings are made by the subdivision. Adams , 342 Wis. 2d 444, ¶¶ 1-5. A town issued a permit granting an application for a livestock facility with conditions, which the State Livestock Facilities Siting Review Board affirmed, with modifications to the conditions. Id. , ¶ 1. Applying the Siting Law, the supreme court concluded that the siting board correctly determined that the town had, in part, "impermissibly conditioned the terms of a siting permit without following the guidelines set forth by the legislature." Id. , ¶ 2.
¶ 110 In addressing a remedy, the court's conclusions were explicitly premised on "the unusual circumstances of the case," and the "unique procedural posture" that the town-issued permit was in when it reached the siting board. Id. , ¶¶ 63, 65. The court concluded that the siting board could properly reverse individual improper conditions without reversing livestock siting or expansion approval in whole, and therefore the board acted within its authority when it left the approval in place and struck down specific improper conditions. Id. , ¶¶ 60-65. While the siting board "could have reversed the Town's decision in its entirety, restoring the parties to the position they were in before [the property owner] filed the application," on the particular facts of the case the court concluded that the board could instead properly modify the permit. Id. , ¶ 60.
¶ 111 The court rejected an argument by the town based on a provision in the Siting Law, directing that, if the board determines that a challenge is justified, the board "shall" "reverse the decision of the political subdivision." Id. , ¶ 61. The town argued that this provision "compels the Board to outright reverse improper permits rather than modify them." Id. Given the nature of the town's errors, the court concluded, "[i]t would make little sense," "to read the Siting Law as prohibiting the Siting Board from correcting the problem in as efficient a manner as possible."Id. , ¶ 63.
¶ 112 It was significant to the court that "the Siting Law and ATCP 51 were plainly designed to facilitate the speedy approval of proper siting applications," a purpose that would be "significantly frustrate[d]" if the court were to "invalidate the Siting Board's action precisely because it was the most efficient option available." Id. , ¶ 64. Because the process included "long and unnecessary delays," "it would only compound that problem to 'reward' farm operators challenging invalid CUPs by returning them to the beginning of the application process." Id. "Such an outcome would render many of the other carefully designed components of the [Siting Law] meaningless." Id .
¶ 113 In sum, Adams involved a strict set of statutory requirements, mandating that the town issue a permit for the facility unless the town could make certain findings, and the siting board correctly interpreted the Siting Law to determine that the town plainly lacked authority to include certain conditions in the permit. In sharp contrast, the zoning committee here could not grant a permit to Enbridge unless it finds that the six standards in Dane County Ordinance § 10.255(2)(h) are met, and the zoning committee has never made that determination when taking into account potential insurance conditions integral to the permit with a proper understanding of the Act 55 insurance limitation.
¶ 114 Moreover, we see no reason to view a return to the zoning committee as, in Enbridge's view, an improper "reward" for allegedly manipulative or obstructive conduct by the County. The County did not invite passage of the Act 55 insurance limitation in the midst of its deliberations on the permit in this case, and Enbridge does not argue that the permit was unlawful when issued in April 2015. Also, there is nothing in the record to suggest that the zoning committee acted in anything other than good faith based on its best understanding of the meaning of the new law.
¶ 115 Enbridge argues that the severance remedy selected by the circuit court was correct in part because it would be "the more efficient remedy." However, efficiency is only one goal of fashioning an appropriate remedy in response to inappropriate agency action. We conclude that the severance remedy would improperly deprive the zoning committee of the opportunity to consider what valid, enforceable permit conditions, insurance and otherwise, are adequate to satisfy the permitting standards established by ordinance, with the benefit of a correct understanding of the pertinent legal standards, including the Act 55 insurance limitation. See DANE COUNTY ORDINANCE § 10.255(2)(h).
¶ 116 For reasons that should be evident given our remedy discussion to this point, the landowners fail to persuade us with their alternative remedy request that we leave permit conditions 7 and 8 in place, and not order this matter returned to the zoning committee.
¶ 117 No party suggests that we need to address how the zoning committee should or must approach any particular permit issue in further proceedings following remand. We merely repeat that the zoning committee has discretion to apply the ordinances to determine what conditions a conditional use permit should include.
CONCLUSION
¶ 118 For these reasons, we reverse the order denying the landowners the right "to challenge Dane County's finding that Enbridge carries comprehensive general liability insurance coverage that includes coverage for sudden and accidental pollution liability"; reverse the order of the circuit court dismissing the landowners' action; reverse the order of the circuit court ruling conditions 7 and 8 of the conditional use permit void and unenforceable and severing these conditions from the permit; and remand to the circuit court with directions to return this matter to the Dane County Zoning and Land Regulation Committee for further proceedings consistent with this opinion.
By the Court .-Order reversed and cause remanded with directions.
Not recommended for publication in the official reports.

The conditional use permit was requested by an entity named Enbridge Energy Company. One of the two actions in this consolidated case was initiated by Enbridge Energy Company, Inc., and Enbridge Energy, Limited Partnership. Throughout this opinion, we follow the parties in referring to a unitary "Enbridge." However, we observe that it may matter to issues revisited following remand precisely which entity is required to undertake particular obligations.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The parties dispute whether the most apt description for the liquid that Enbridge pumps through the pipeline under pressure is "crude oil," "tar sands," "bitumen," or "heavy crude oil." Having acknowledged the dispute, for the sake of simplicity we use the first term. All that matters to our analysis in this regard is that the parties do not dispute that Enbridge may be characterized as an "operator of an interstate hazardous liquid pipeline," as referenced in the Act 55 insurance limitation.

Dybdahl stated that Enbridge representatives provided him with a summary of insurance coverage that Enbridge purported to have in place, although Dybdahl reported that Enbridge had not allowed him to "read any of the actual liability insurance policies," on the ground that the policies contained "trade secrets." Nevertheless, Dybdahl reported that he considered the summary to be "credible," although he separately questioned what insurance Enbridge might carry in the future.
While on the "trade secret" topic, we need not, and do not, address an argument the landowners make that Enbridge's failure to produce the policies defeats any argument that Enbridge showed the zoning committee that it carries the insurance specified in the Act 55 insurance limitation. Given our decisions regarding the showings necessary to trigger the Act 55 insurance limitation and the appropriate remedy in this case, we need not address the "trade secret" topic further.

Regarding condition 8, Appendix A to the Dybdahl report is a 1-1/2 page list of specifications related to the two insurance policies he recommended. Specifications included that the environmental impairment liability insurance policy would have an annual aggregate policy limit of $50,000,000 if the policy insures more than properties in Dane County, that the insurers would meet certain A.M. Best ratings, and that Enbridge would be required to provide proof of insurance "[u]pon request by Dane County."

The County represented at oral argument that appeals from zoning committee decisions are now handled in a different manner than they were in 2015. However, no party has suggested that any such changes are pertinent to any issue we resolve today, including our resolution of the proper remedy.

These facts are included for context, but Enbridge does not pursue any constitutional argument in this appeal.

Discussion in the circuit court and in briefing on appeal includes references to an "asterisk" or "footnote" being attached to permit conditions 7 and 8, but this is not accurate. The record reflects that the permit was in fact amended only to add an end note, which quoted the text of the Act 55 insurance limitation, without making explicit reference to, or notation on, conditions 7 or 8.

In its petition for certiorari review, Enbridge summarized additional events from 2014 involving earlier interactions it had with County representatives regarding a permit for the pipeline expansion project, but Enbridge does not argue that these events are pertinent to any issue that we now resolve.
Separately, we now address arguments of the parties regarding the basis or bases of the certiorari proceeding initiated by Enbridge. As background, Enbridge stated in its petition for certiorari review that the circuit court had jurisdiction "pursuant to Wis. Stat . § 59.694(10) and the common law right of certiorari review codified in Wis. Stat . § 781.01." At oral argument on appeal, the County and the landowners both took the position that the circuit court had jurisdiction under common law certiorari, but not pursuant to § 59.694(10), because only persons aggrieved by a decision of a board of adjustment, or a taxpayer, may pursue certiorari under the terms of § 59.694(10), and no decision of a board of adjustment is at issue here. However, neither the County nor the landowners have pointed to any distinction between the two bases for certiorari review that could matter to any issue we address in this appeal.
Enbridge's positions regarding the nature of the certiorari action are not consistent, which causes us to briefly skip ahead to the remedy issue discussed in section III. below. At oral argument, Enbridge took the position that it does not matter how we categorize the basis or bases for certiorari review by the circuit court. However, in its appellate briefing, Enbridge suggests a remedy argument based on the fact that courts in § 59.694(10) certiorari review actions "may reverse or affirm, wholly or partly, or may modify, the decision brought up for review." See Wis. Stat . § 59.694(10). Enbridge asserts that this statutory language "does not authorize" remand by a court to the zoning committee. If Enbridge intends this as a stand-alone argument based on a plain meaning interpretation of § 59.694(10), we reject it. Providing that a court "may" "wholly or partly" "reverse" or "modify" an agency decision does not suggest a prohibition on remand to the agency following a complete or partial reversal or modification. That is, this language says nothing about the possibility of remand to the agency and does not in restrict remand in any fashion.
Having made these points, we draw no further distinctions between the two bases for certiorari review referenced by the parties.

The landowners raise what could be viewed as two threshold issues, a stay issue and a retroactivity issue. However, in each case they do so with little development, including little supporting, pertinent authority that is tied to whatever specific argument they intend to make, and in any case we need not address these issues. We now briefly summarize the two issues.
Stay issue. The landowners suggest that the permit issued by the zoning committee effective April 21, 2015, "was final upon action of the Zoning Committee," and therefore the Act 55 insurance limitation "does not apply," because the Enbridge appeal of this decision to the county board did not stay the effect of the permit.
Retroactivity issue. The landowners suggest that the Act 55 insurance limitation cannot be applied "to retroactively invalidate the zoning committee's action."
The fact that we do not address the undeveloped stay issue means that we also need not address an argument Enbridge makes based on its purported reliance on the county zoning administrator's July 24, 2015, revised permit that severed conditions 7 and 8 from the permit, because the only context in which Enbridge makes this argument is on the stay issue. We separately observe that, even if we were to address Enbridge's reliance argument, we would reject it. First, in April 2015, the zoning committee made clear that it wanted to impose permit conditions 7 and 8. Second, as the landowners point out, it would have been imprudent of Enbridge to have relied to a substantial degree on the exclusive action of the zoning administrator in July 2015, given the undisputed fact that the Dane County Ordinances provided that only the zoning committee had authority to grant or deny an application for a conditional use permit, under Dane County Ordinance § 10.255(2)(b). Third, after the zoning administrator issued the revised permit, the zoning committee made clear to Enbridge in September 2015 that it considered the revised permit issued by the zoning administrator to have been improper. Even if we would assume reasonable reliance from July to September 2015, this would not explain reasonable reliance between September and December 2015. Fourth, the only evidence presented to the County on the reliance topic was the assertion of an Enbridge manager that, since July 2015 Enbridge had undertaken substantial work on the project and "committed approximately $10 million" toward its completion. This representation included no detail about what it meant for Enbridge to "commit" this amount of money. For example, not all commitments are irrevocable. Also, Enbridge offered no evidence to suggest that this estimated $10 million would be "lost" money going forward if, for example, the County issues a permit in the future, which is valid under the Act 55 insurance limitation, that contains insurance conditions or insurance-related conditions, or no such conditions.

Enbridge fails to direct us to any place in the record where it made a timely, developed argument on this topic to the circuit court. However, the landowners fail to make a forfeiture argument, and we do not rely on forfeiture to reject whatever arguments Enbridge intends to make.

The circuit court's use of the term "implead" was imprecise. See Wis. Stat . § 803.05(1) (explaining the concept of impleading, which involves a defending party in a pending lawsuit acting as a third-party plaintiff, in order to bring a new person, a third-party defendant, into the lawsuit). However, we conclude that the "leave to implead" aspect of the order reflected an intent to grant the landowners party status in the certiorari action that is the same as the status of the County in addressing the validity of permit conditions 7 and 8, and Enbridge makes no contrary argument involving the term "implead."

Enbridge fails to address basic principles of intervention, but we now do so. It is unclear, but if Enbridge intends to argue that the circuit court improperly allowed the landowners-as-intervenors to enlarge the nature of the dispute in the certiorari action, we would reject this argument. We note that WIS. STAT . § 803.09(1) provides:
Upon timely motion anyone shall be permitted to intervene in an action when the movant claims an interest relating to the property or transaction which is the subject of the action and the movant is so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect that interest, unless the movant's interest is adequately represented by existing parties.
Enbridge does not argue that the circuit court could not have made proper determinations that the landowners claimed an interest relating to the permit application, and that the landowners were "so situated that the disposition" of the certiorari action "may as a practical matter impair or impede" the landowners' "ability to protect that interest," or that the County adequately represented the landowners' interest. On this last point, we note that today we conclude that some arguments advanced by the landowners, and not advanced by the County, on the validity-of-the-permit issue have merit, and this conclusion will clearly assist the landowners in protecting their interest.

Our approach is consistent with statements Enbridge makes on appeal. At oral argument, Enbridge spoke about the zoning committee being "the decision maker here," and in briefing on appeal Enbridge conceded that it commenced the certiorari review action as "an action for certiorari review of a zoning board's decision," and that we are to review "the decision of the [zoning] board."

While it is not our focus in this section of our discussion, for the potential benefit of the parties following remand we note an apparent mismatch between phrasing used by Dybdahl and the wording of the Act 55 insurance limitation. Dybdahl's report repeatedly refers to Enbridge's "general liability" policies, while WIS. STAT . § 59.70(25) refers to "comprehensive general liability insurance coverage." It is quite common in insurance litigation for parties to refer to "CGL policies," which is the language used in Act 55, but we are unaware of references to "GL policies," as seemingly referenced by Dybdahl.

In this appeal, the landowners did not cite Just v. Land Reclamation Ltd. , 155 Wis. 2d 737, 760, 456 N.W.2d 570 (1990), until oral argument. However, they did so in response to a question that we posed to the parties well in advance of oral argument. Moreover, we gave the parties an opportunity to submit post-oral argument letter briefs addressing Just .

The court in Just uses the phrase "abrupt or immediate" twice, and the phrase "abrupt and immediate" twice. Just , 155 Wis. 2d at 741, 745-46 (emphasis added). However, we see no difference in meanings that could matter here and for ease of reference we use the disjunctive.

In observing that the zoning committee could "reasonably" make such decisions to explain the integral nature of insurance and other potential conditions, we intend to convey no opinion about the validity of any particular determination that the committee may make following remand. This would depend on all evidence available to the committee and the reasoning process that is or is not demonstrated by the committee. Our hypothetical is intended only as a theoretical illustration of the interrelated nature of the various conditions and potential conditions in the permit.

In an attempt at a narrow argument against returning this matter to the zoning committee, Enbridge directs us to a Dane County ordinance that addresses revocations of conditional use permits and briefly asserts that, based on this revocation ordinance, "there can be no basis under the County Ordinances for the County to reconsider, revoke, amend or take any other action affecting Enbridge's rights in the" permit here. However, this is not a permit revocation situation, and Enbridge fails to develop an argument that, under the unusual circumstances here, the zoning committee is without authority to consider permit conditions that it deems necessary, based on a correct understanding of the Act 55 insurance limitation. We address this Enbridge argument no further.